Minnie **BEAMON**, Guardian and Conservator of the Estate of Minnie Ross, Plaintiff–Respondent,

v.

Jessie **ROSS**, Defendant–Appellant.

No. 54327.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 20, 1988.

Wilson Gray, St. Louis, for defendant-appellant.

Andrew G. Neill, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from the order of the trial court in a discovery of assets proceeding holding that $48,456.50 claimed and held by defendant belongs to plaintiff. We affirm.

On February 6, 1950, Odia Ross and Minnie Ross, his wife, opened savings account number 283460–1 with First National Bank in St. Louis (now Centerre Bank). The account was in the name of Odia Ross or Mrs. Minnie Ross, either or survivor. On December 21, 1984, Odia Ross authorized the bank to change the name on the account to "Odia Ross or Minnie Ross or Jessie Ross." The account number remained the same. Jessie Ross was the widow of Odia Ross' brother. In 1984 Odia was approximately 90 years old; Minnie was approximately 85. Minnie was afflicted with Alzheimer's disease and by 1984 was mentally incapacitated although not judicially so declared. Odia was in good health and fully competent. On April 16, 1986, Odia choked to death on a piece of food. A niece moved into the home to look after Minnie and discovered the account passbook which she turned over to Jessie. At the time the account contained $48,-456.50.

Upon receiving the passbook Jessie closed out the account and deposited the money into a new account in the joint names of herself and a granddaughter. She thereafter withdrew in excess of $10,-000 from that account and deposited it into an account in her name with Boatmen's Bank. Jessie utilized portions of the money from account number 283460–1 for personal purchases. She provided none of the money to Minnie and expended none for Minnie's benefit. It was her contention in the trial court and here that half the money belongs to Minnie and the other half to her. This rests upon her conclusion that Odia was the sole source of the funds in the account. Jessie contributed nothing to the account, and she was never given the passbook or any information regarding the account until after Odia's death. The record does not reflect whether Minnie personally made any deposits into the account.

Minnie was adjudicated as incapacitated and disabled in 1986. The guardian and conservator of her estate brought this action to discover the funds from the Centerre account as an asset of Minnie's. The trial court found Minnie was the sole owner of the account and ordered Jessie to deliver the sum of $48,456.50 plus interest to the conservator.

Section 362.470 RSMo 1986, provides for the creation and interpretation of joint bank accounts. *In Estate of LaGarce*, 487

S.W.2d 493 (Mo. banc 1972), the court held that the statute created a statutory joint tenancy and that "upon the death of the depositor who furnished the money, we cannot see any reason why the surviving joint tenant should not be held to be the owner of the deposit even though the donor may have intended to retain the beneficial interest in the account during his lifetime." [2–4]. In *Carroll v. Hahn*, 498 S.W.2d 602 (Mo.App.1973) we held that *LaGarce* did not deal with the rights of the parties to such joint accounts during their lives. During the lives of the parties the depositor who furnished the money may revoke the joint tenancy. While any joint tenant may withdraw any or all of the funds "the realities of ownership, the real intention of the parties and the purpose and nature of the account may be shown to determine the interest each has in the account, thus subjecting the one who has deposited none of the funds to accountability and liability." [4–6]. *See also, Blue Valley Federal Savings and Loan Association v. Burrus*, 637 S.W.2d 737 (Mo.App.1982) [5].

Sec. 362.470.5 provides that a "deposit made in the name of two persons or the survivor thereof who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified." The presumption created by that section does not disappear because an additional party is included on the account. *Stillings v. Citizens Bank of Ava*, 637 S.W.2d 401 (Mo.App.1982) [5]. Evidence to overcome the presumption must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the trial judge's mind. *Wulfert v. Boatmen's Bank of Jefferson County*, 671 S.W.2d 355 (Mo.App.1984) [6]. The entirety tenancy may be severed during the lifetimes of the spouses only by joint and mutual action of both. *State ex rel. State Highway Commission v. Morganstein*, 649 S.W.2d 485 (Mo.App.1983) [5].

The account here was originally created as a tenancy by the entirety and, as to the interest of Odia and Minnie, retained that character when the account names were changed in 1984. There is no evidence Odia attempted to sever the tenancy, nor could he have done so without Minnie's concurrence, which she lacked the capacity to give. The entireties entity was the sole contributor of the funds which made up that account. Odia and Minnie were the entireties entity. Upon Odia's death the entire interest of the entireties entity vested in Minnie. She is deemed to have been the sole contributor to the account as the successor to the entireties entity. Jessie contributed nothing. It was clearly the purpose of Odia, acting for the entireties entity, to establish the account for the protection of his incapacitated wife in the event of his death or disability by placing into the hands of a trusted relative the right to withdraw money for Minnie's care at a time she was unable to do so herself. His trust was, unfortunately, misplaced. Minnie as the sole contributor to the account was entitled to hold Jessie accountable for any money she withdrew from the account. The guardian and conservator had the same power over Minnie's interest in the joint account that Minnie had prior to her adjudication. *Estate of Thompson*, 539 S.W.2d 650 (Mo.App.1976) [2].

JUDGMENT AFFIRMED.

STEPHAN and SATZ, JJ., concur.