Thomas C. BROWN and Sofia Brown, Cross–Claim Plaintiffs/Appellants,

v.

MERCANTILE BANK OF POPLAR BLUFF, Cross–Claim Defendant/Appellant.

Nos. 17347, 17381.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 5, 1991.

G.H. Terando, Wilhoit, Edmundson, Terando & Hopkins, Poplar Bluff, for cross-claim plaintiffs-appellants.

Elizabeth A. Blaich, Summers, Walsh, Pritchett and Blaich, Poplar Bluff, for cross-claim defendant-appellant.

SCHRUM, Presiding Judge.

Cross-claimants Thomas C. Brown and Sofia Brown sought actual and punitive damages from Mercantile Bank of Poplar Bluff alleging that Mercantile wrongfully withheld from them the principal and interest on an $85,000 certificate of deposit pursuant to a garnishment when Mercantile knew, or should have known, the funds were not subject to garnishment. Following a bench trial, the court awarded the Browns $4,921.86 in actual damages and $4,874 in attorney fees and denied their claim for punitive damages.

In case No. 17347, Mercantile appeals from the award of actual damages and attorney fees. In case No. 17381, the Browns appeal from the denial of their claim for punitive damages.

We conclude that the trial court erred in its determination of the amount of actual damages, erred in awarding attorney fees, and did not err in denying the claim for punitive damages. We modify the award of damages, and, as modified, the judgment is affirmed.

## FACTS

On January 3, 1985, Thomas Brown and Sofia Brown purchased an $85,000 twelve-month certificate of deposit from Mercantile. The face of the CD included the following:

> Payable to the depositor upon presentation and surrender of this certificate, properly endorsed, on a maturity date. If more than one depositor is named above, and unless specifically indicated therein to the contrary, this certificate and the deposit evidenced hereby, shall belong to said depositors as joint tenants with right of survivorship (and not as tenants in common); provided, however, for all purposes, including endorsement, payment of principal and interest, presentation, transfer, and any notice to or from the depositors, this institution may deem and treat as the absolute owner hereof any one depositor named above, or the survivor or survivors, and each such depositor shall be the agent of each other depositor for all the foregoing purposes.

Named as "Depositors" on the CD were "Thomas C. Brown or Sofia Brown or Jessica Lynn Brown." Thomas C. Brown and

Sofia Brown were—and are—husband and wife. Jessica Lynn, the Browns' daughter, was 15 years old on the date the CD was issued. Thomas and Sofia Brown purchased the CD with proceeds from the sale of a beer distributorship.

Interest on the CD, which was 9% for the initial term, was payable monthly. The CD was automatically renewable for a 12–month term in the absence of the occurrence of one of these conditions: presentation for payment on or within 10 days after a maturity date; receipt by the bank, before a maturity date, of the depositor's written notice of intention to redeem; or written notice to a depositor, not less than 30 days before a maturity date, of the bank's intention to redeem at maturity.

On October 29, 1985, Thomas and Sofia Brown used the Mercantile CD as security for an $85,000 line of credit at Commerce Bank of Poplar Bluff. The Browns endorsed the back of the CD: "Assigned and pledged to Commerce Bank of Poplar Bluff, N.A., under that certain assignment dated 10–19–85." The Browns delivered the CD to Commerce; Mercantile was aware that the Browns had used the CD as collateral for a line of credit at Commerce.

The present dispute had its genesis in prior litigation involving Thomas Brown. On April 30, 1985, in *Statler Mfg. Inc. v. Brown*, 691 S.W.2d 445, this court reversed a judgment against Statler and in favor of

Brown and his business partner Eugene Ferguson and remanded with instructions to the Ripley County Circuit Court to enter judgment for $120,337.40 in favor of Statler against Brown and Ferguson. The judgment in favor of Statler was not against Sofia or Jessica Lynn Brown.

The Statler judgment was a precursor to garnishment proceedings in Ripley County, a separate lawsuit brought by Statler in Butler County, and the cross-claim now before us, which was filed as a part of Statler's Butler County lawsuit. A chronological narration of litigation-related events follows.[1]

In November 1985, in Ripley County, Statler summoned Mercantile as a garnishee in aid of execution on the judgment. In its initial response, Mercantile stated it was "unable to determine what interest, if any, Thomas C. Brown has in said Certificate of Deposit and, therefore, requests the Court for an order defining its liabilities therein."

On December 6, the court granted a request from Statler for an order requiring immediate delivery of the CD. On December 16, Mercantile filed a "supplemental answer of garnishee" in which it stated that the CD was not in its possession; that it was a time certificate not payable until January 3, 1986; that prior to the garnishment, on October 29, 1985, $45,000 of the CD had been assigned to Commerce; and

1. The record on appeal filed with this court consists of the cross-claim trial transcript and a legal file which includes copies of the Statler petition, the Browns' cross-claim petition, related motions and responses, and the judgment. The parties' attorneys stipulated, pursuant to Rule 81.14(e) to the truth and accuracy of the transcript and the contents of the legal file.

Attorneys for the parties also filed with this court a stipulation that "the original exhibits or photocopies thereof will be filed separately, as provided by Supreme Court Rules 81.12 and 81.15." Mercantile filed as exhibits the original certificate of deposit and a photocopy of the docket sheet from the Ripley County garnishment proceedings. Also in the file are photocopies of certain of the documents filed with the Ripley County Circuit Court in the garnishment proceedings. Where there are inconsistencies between the documents and the docket sheet concerning dates, we use the dates indicated on the docket sheet.

Contemporaneously with the filing of the Browns' appellants' brief, the attorney for the Browns deposited with this court a bound collection, entitled "Exhibits," which contains photocopies of various documents. The documents, labeled sequentially "A" through "P", correspond, for the most part, to exhibits similarly designated and used at trial by Thomas Brown's attorney. Throughout the course of the trial, Thomas Brown's attorney referred to these documents as having been "previously identified and admitted" or "previously identified." We find nothing in the record to support the statements that these exhibits were admitted into evidence. However, Mercantile has lodged no objection to the Browns' collected "Exhibits," and, in fact, Mercantile makes repeated reference in its briefs to many of the documents. We proceed on the assumption that all documents reproduced in the Browns' "Exhibits" were considered in their entirety by the trial court in arriving at its decisions in this case.

that "the face of said Certificate of Deposit shows the ownership to be in the names of Thomas C. Brown *or* Sofia Brown *or* Jessica Lynn Brown and under the statutes this is joint ownership and not all of the owners being judgment debtors, the jointly owned asset may not be levied upon for the individual debts of the joint tenants (emphasis in original)." Mercantile then asked the court to quash the garnishment.

On December 18, the court revised its order of delivery to permit Mercantile, in lieu of delivering the CD, to pay the sheriff $48,000.[2] On the same date, Statler filed a motion for contempt against Mercantile. On December 19, apparently following a hearing, the court continued proceedings on several motions, including Statler's motion for contempt, "in order to allow service of indispensable parties."[3]

Also on December 19, 1985, Statler filed a petition in the Butler County Circuit Court naming as defendants Thomas and Sofia Brown, Eugene and Patricia Ferguson, Commerce, and Mercantile. In Count I of its petition, directed solely against the Browns, Statler alleged Thomas Brown fraudulently conveyed certain real property to Sofia Brown with intent to hinder collection of the Statler judgment against him. Count II, virtually identical to Count I, was directed solely against the Fergusons. In Count III, directed against Mercantile, Statler sought actual and punitive damages arising from Mercantile's alleged refusal to pay to the sheriff the $48,000 ordered by the court. In Count IV, directed solely

against Commerce, Statler alleged the assignment of the CD to Commerce was made by the Browns with intent to hinder collection of the judgment against Thomas Brown and sought to set aside the assignment of the CD to Commerce.

In a January 3, 1986, letter, the attorney[4] for Mercantile advised the president of Commerce that the CD had not been renewed and that, "[p]ursuant to garnishment and an order of delivery," the proceeds of the CD, including interest, would be paid into the Ripley County Circuit Court. The letter advised that Mercantile's check in the amount of $85,649.73 would be payable to nine payees: Statler Manufacturing, its three co-plaintiffs, and the law firm representing them; the three Browns; and Commerce. The letter also stated, "You are further advised that the above action has been taken without presentment of the certificate for payment. However, the certificate has been purged from the Bank's system and will not be paid except as stated above."[5] Copies of the letter were sent to Thomas and Sofia Brown, Thomas Brown's attorney,[6] and attorneys for Statler and Commerce.

Despite its announced intentions, Mercantile did not follow through on its plan to send a nine-party check to the Ripley County Circuit Court. Instead, it renewed the CD at an annual interest rate of 5.75% and began issuing monthly interest checks payable to all three Browns. However, Mercantile delivered the checks to the Ripley

**2.** A reason for the amount designated in the order eludes us.

**3.** In its brief, Mercantile states that the court, at a December 19 hearing, "vacated its prior order of immediate delivery of December 11 [apparently the order filed December 18]...." There is nothing in the record, outside of pleadings by Mercantile, to support the assertion that the court vacated the delivery order.

**4.** The lawyer who ultimately tried the cross-claim for Mercantile is not the lawyer who advised and represented Mercantile during 1986 and early 1987 regarding disposition of the proceeds of the CD. The lawyer who represents Mercantile on appeal is not the lawyer who tried the case for the bank.

**5.** At trial, there was no testimony to identify the nine payees, nor was there testimony that Mer-

cantile had taken its action "without presentment" and that the CD had been "purged from the Bank's system and will not be paid except as stated above." That information is drawn from the January 3, 1986, letter which is included in the Browns' "Exhibits" described *supra* note 1. At trial, Thomas Brown's lawyer referred to the letter as having been previously identified as "Exhibit F" but he made no reference to its having been previously admitted into evidence. As explained in note 1, we treat the letter as having been in evidence in its entirety.

**6.** At certain times throughout the proceedings, the Browns have had joint counsel; at other times, separate counsel. We have attempted to differentiate where the record permits.

County circuit clerk for "safekeeping." The docket sheet of the garnishment proceedings indicates the first such check was received by the court on January 23, 1986.

In a January 7, 1986 letter, Commerce advised Thomas and Sofia Brown that it would make no more advances on the loan secured by the CD, and the bank requested the Browns provide substitute collateral because of "[r]ecent developments concerning a judgement against Mr. Tom Brown and the action of Mercantile Bank of Poplar Bluff in not renewing your certificate of deposit...."

In a January 17, 1986, letter to Mercantile's attorney, the attorney for Thomas Brown, objecting to Mercantile's sending interest checks to the circuit clerk, stated:

> The Bank is aware of the fact that Sofia Brown is Thomas C. Brown's wife and that Jessica L. Brown is their child. Thus, the Bank is aware of the fact that this is property held by the entireties as to an undivided interest and by a third party as to the remaining undivided interest. The wife and child have no judgment against them and their interest in the CD should not have been put at risk. The law in this state is clear that property held by the entireties is not available for execution or satisfaction of a judgment against only one of the spouses.

Despite the objection, Mercantile continued to send the interest checks, payable to all three Browns, to the Ripley County circuit clerk until mid–1987, at which time Mercantile began to retain possession of the checks, still payable to the Browns. At the trial of the cross-claim, Mercantile vice-president William B. Gresham, acknowledging that Mercantile's handling of the check was not pursuant to a court order, stated, "[W]e thought we were doing what was necessary to protect the Bank and other parties in interest at the time."

In June 1987, Mercantile moved to add Jessica Lynn Brown as a party to the Butler County lawsuit filed by Statler and filed an interpleader action by which it sought to pay the principal and interest represented by the CD into the Butler County Circuit Court. At some point after June 1987, but before May 1988, the Butler County litigation was moved to the Wayne County Circuit Court.

The garnishment action was terminated in December 1987 when the judgment in favor of Statler was satisfied from funds other than the CD. In January 1988, Mercantile issued a check to the Browns and Commerce for $98,518.06, the CD principal and accrued interest.

As a part of the litigation initiated by Statler in Butler County, the Browns, in May 1988, filed the cross-claim against Mercantile which resulted in the judgment now on appeal. In their cross-claim, the Browns alleged that Mercantile had breached the terms of the CD and had breached its fiduciary duty to them by its refusal, despite their demand, to pay them the principal and interest represented by the CD. The Browns requested $50,000 in actual damages and $100,000 in punitive damages.

The cross-claim was tried independently. Thomas Brown testified that he and Sofia Brown used the CD as collateral for a line of credit at Commerce to enable Sofia to establish M & A Meat Company. The Browns intended to cash the CD at maturity in January 1986 and use the funds to pay off their note with Commerce and invest the remainder in the meat business. Commerce initially advanced $45,000 and eventually made total advances of $71,000, but the bank declined to advance the final $14,000 after it learned of the judgment against Thomas Brown and of Mercantile's non-renewal of the CD.

Thomas Brown testified about the following damages that he claimed resulted from the unavailability of the CD funds:

(1) the difference between interest the Browns paid to Commerce and interest paid by Mercantile on the CD;

(2) interest differential on $14,000 borrowed from First Missouri State Bank after Commerce declined to advance more than $71,000;

(3) interest income the Browns lost on money paid as income taxes because Mercantile reported to the Internal Reve-

nue Service the Browns' CD interest income which they did not receive;

(4) lost profits suffered by M & A Meat Company because the unavailability of the CD funds prevented the company from purchasing in large quantities and hiring more than one sales representative; and

(5) attorney fees of $4874.50.

Regarding item number 1, Mercantile objected "to the relevancy only." The court overruled the objection. Mercantile objected to testimony about item 2 as evidence of special damages not pled by the Browns. Mercantile asked that its objection extend "to any further testimony at all by this witness as to any special damages in the way of interest that he may have paid, loss of earnings, loss of profits, or anything of that nature." The court permitted the objection to be a continuing one. Mercantile objected to testimony about items 3, 4, and 5 on other grounds as well. Prior to cross-examining Thomas Brown, the attorney for Mercantile asked the court for a ruling on his objections. The court sustained the objections "as to M & A Meat operation...."

Neither party requested findings of fact and conclusions of law, and the trial court made none. The court entered judgment awarding the Browns $4,921.86 [7] plus interest for actual damages and $4,874 for attorney fees. The court denied the Browns' claim for punitive damages.

## STANDARD OF REVIEW

■■■ Our review of a court-tried case is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Thus, we will affirm the judgment of the trial court unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32. Where, as here, the trial court makes no findings of fact, we consider all fact issues to have been found in accordance with the result reached. *Johnson v. Gregg*, 807 S.W.2d 680, 685 (Mo.App. 1991). We are to sustain the judgment of the court if the result was correct on any tenable basis. *Id.*

## NATURE OF THE DISPUTE

■■■ As a preliminary matter, we address the disagreement between the parties about the nature of the Browns' claim. The Browns assert that Mercantile's actions constituted a breach of contract and a breach of its fiduciary relationship with them. Throughout their appellants' brief in Case No. 17381 and their respondents' brief in Case No. 17347, the Browns proceed on the apparent assumption that a fiduciary relationship existed between them and Mercantile. Absent evidence to prove a fiduciary relationship, there is no such relationship between a bank as lender and a customer as borrower. *Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42, 53 (Mo.App.1985). In the case before us, Mercantile was the borrower and the Browns were the lenders. *See Walker v. Gateway Nat'l Bank*, 799 S.W.2d 614, 617 (Mo.App.1990). Despite the factual distinction between *Distributors* and the case before us, we see no reason why the principle stated in *Distributors* should not apply. The Browns have pointed to no evidence that establishes the

---

**7.** In their briefs on appeal, the parties appear to agree that the trial court's actual damage award of $4,921.86 was calculated based on the following components:

$2,582.96—The difference, according to the Browns' evidence, between the interest the Browns earned on the CD and the amount of interest they paid Commerce.

$2,017.90—The interest differential the Browns paid on $14,000 borrowed from First Missouri State Bank after Commerce declined to make additional advances against the line of credit.

$321.00—Interest the Browns would have earned on money paid prematurely as taxes

on CD income they did not receive until January 1988.

We realize the conflict in the record about the amount of interest paid the Browns by Mercantile. However, we note that, at trial, the court said it was "going to accept the figure that was given to the Court by Mr. Terando" unless Mercantile objected. The attorney for Mercantile objected "to the relevancy only." For purposes of this appeal and the modification we make in the award of actual damages, we proceed on the basis of the above stated apportionment of damages.

existence of a fiduciary relationship. Thus we believe this was a dispute between borrower and lender to be resolved according to principles of contract law.

## CASE NO. 17347: MERCANTILE'S APPEAL

### POINT I: ACTUAL DAMAGES

■ In its first point relied on, Mercantile states:

> The court erred in finding that, while garnishment remained pending, Mercantile Bank wrongfully failed to pay over funds from a certificate of deposit garnished by a judgment creditor holding a judgment against the husband only, where the certificate was issued in the name of the husband, the wife, and the child as joint tenants with the right of survivorship, and no court ever determined that all of such funds belonged exclusively to the husband and wife.

Although the trial court made no findings of fact and conclusions of law on the record, implicit in the judgment is a conclusion that Mercantile failed to perform some obligation by its refusal to pay the funds to Thomas and Sofia Brown. Nevertheless, Point I does not specify the action or ruling of the trial court sought to be reviewed. As a result, the point violates Rule 84.04(d). *See Blankenship v. Better Business Bureau,* 782 S.W.2d 131, 134[4] (Mo.App. 1989); *Kolocotronis v. Ritterbusch,* 667 S.W.2d 430, 434–35[6] (Mo.App.1984).

Moreover, it is unclear how Point I satisfies the *wherein* and *why* requirements of Rule 84.04(d). The three components of a point relied on can be succinctly stated as:

> (1) a concise statement of the challenged ruling or action of the trial court,
>
> (2) the rule of law which the court should have applied (the *why* of Rule 84.04(d)), and
>
> (3) the evidentiary basis upon which the asserted rule is applicable or the way in which the trial court incorrectly applied controlling principles of law or misconstrued the facts. (the *wherein* of Rule 84.04(d)).

*Estate of Goslee,* 807 S.W.2d 552, 556 (Mo. App.1991).

■ Compliance with Rule 84.04(d) is discussed at length in *Thummel v. King,* 570 S.W.2d 679 (Mo.banc 1978), *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 483 n. 1 (Mo.App.1991), and numerous other Missouri appellate court opinions. Points relied on that do not comply with Rule 84.04(d) preserve nothing for review. Despite such infirmity, we may look to the argument portion of the brief to determine if there was plain error which would permit relief under Rule 84.13(c). *Estate of Goslee,* 807 S.W.2d at 556.

■ The plain error doctrine is rarely resorted to in civil cases. *State ex rel. Missouri Highway and Transp. Comm'n. v. McNary,* 664 S.W.2d 589, 595 (Mo.App. 1984). Rule 84.13(c) permits this court to consider plain error, but only where the error results in manifest injustice or a miscarriage of justice. We consider Mercantile's first point under the plain error standard.

We treat Point I to be an allegation that the trial court erred in awarding actual damages because Mercantile did not violate its obligation to Thomas and Sofia Brown by its failure to pay them the CD funds in that its performance was excused for various reasons which we find dispersed throughout the argument portion of the brief. From the argument under Point I, we have extracted potential reasons to excuse performance. We summarize those reasons as follows:

> (1) There was no evidence that Mercantile "knew, or should have known," that the funds represented by the CD were "completely tenancy by the entireties property."
>
> (2) There was no court determination that all the money represented by the CD belonged to Thomas and Sofia Brown.
>
> (3) At the time of the garnishment and while the litigation was pending, Mercantile was incapable of determining the interest of Jessica Lynn Brown.
>
> (4) Mercantile was "a stakeholder" and an "innocent third party" and was "concerned about its exposure" to garnishor

Statler, Commerce, Thomas and Sofia Brown, and Jessica Lynn Brown.

Mercantile's various lines of argument are without merit. We take each aspect of the argument in turn.

■ A tenancy by the entirety, which exists only between a husband and wife, is based on the common law fiction that the husband and wife hold property as one person. *Coffey v. Coffey,* 485 S.W.2d 167, 170 (Mo.App.1972). It is well established at common law that there can be an estate by the entirety in a bank account. *Strout Realty, Inc. v. Henry,* 758 S.W.2d 197, 198 n. 1 (Mo.App.1988); *State Bank of Poplar Bluff v. Coleman,* 241 Mo.App. 600, 609, 240 S.W.2d 188, 189 (1951). This common law principle received explicit legislative recognition in the 1977 amendment of § 362.470, RSMo 1986, which provides in part:

> 5. Any deposit made in the name of two persons or the survivor thereof who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified.[8]

A bank account may be held by the entirety even though one of the parties, acting alone, may draw against it. *Strout Realty,* 758 S.W.2d at 198; *Vaughn v. Spitz,* 682 S.W.2d 847, 848 (Mo.App.1984).

■ For many years, Missouri case law has taught that a bank account in the names of husband and wife is presumed to be held by the entirety; this presumption is true even where the account does not designate the parties as husband and wife. *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 213 (Mo.App.1984). This common law presumption is embodied in § 362.470.5 quoted above. *Beamon v. Ross,* 767 S.W.2d 580, 582 (Mo.App.1988). The presumption does not disappear because an additional party is included on the account. *Stillings v. Citizens Bank of Ava,* 637 S.W.2d 401, 404 (Mo.App.1982); *Beamon,* 767 S.W.2d at 582.

■ There is no dispute that Mercantile knew, at all relevant times, that Thomas C.

Brown and Sofia Brown were husband and wife. Thus Mercantile, an experienced banking institution, must be charged with knowledge of the presumption of entirety ownership. Moreover, we note that, at all relevant times, Mercantile was represented by outside counsel, and the Mercantile vice-president directly involved in this matter was an attorney.

■ The presumption of ownership by the entirety is rebuttable. However, evidence to overcome the presumption "must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the trial judge's mind." *Beamon,* 767 S.W.2d at 582. *See also Estate of Huskey,* 674 S.W.2d at 213. Mercantile points to no evidence that would establish that the presumption of entirety ownership had been rebutted.

■ Mercantile also argues that it cannot be convicted of wrongdoing absent a court determination that Thomas and Sofia Brown owned "all of such funds" as tenants by the entirety. Mercantile argues:

> In cases where three separate joint depositors are shown on the face of a certificate, even if two of the joint depositors are husband and wife, there must be an opportunity given for a factual finding by a court or jury, in which evidence is heard and a determination as to credibility and evidence made concerning the source of funds and the true ownership of such funds. It has been consistently held that evidence of the source of funds in a joint account or deposit is not only admissible, but required in order to establish the interest of the parties thereto.

In support of this line of argument, Mercantile directs our attention to *Greenwood v. Bank of Illmo,* 782 S.W.2d 783 (Mo.App. 1989); *Griffin v. First Community Bank of Malden,* 802 S.W.2d 168 (Mo.App.1990); *Pollock v. Brown,* 569 S.W.2d 724 (Mo.banc 1978); *Peters v. Carr,* 654 S.W.2d 317 (Mo. App.1983); *Carroll v. Hahn,* 498 S.W.2d 602 (Mo.App.1973); and *Neiman v. First Nat'l Bank of Joplin,* 420 S.W.2d 20 (Mo.

---

**8.** Section 362.470 applies to certificates of deposit. *See Crider v. Steinberg,* 721 S.W.2d 778, 779 (Mo.App.1986).

App.1967). We see no support in these opinions for Mercantile's above-quoted argument. Moreover, Mercantile identifies no evidence that would create doubt about whether the source of funds to purchase the CD was other than Thomas and Sofia Brown.

 We turn now to Mercantile's argument that it was incapable of determining the interest of Jessica Lynn Brown in the CD. Mercantile's argument is bereft of any mention of the protection provided by statute and the terms of the CD.

Section 362.470, RSMo 1986, provides, in pertinent part:

1. When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon ... may be paid to any one of such persons during his lifetime.... The payment and the receipt or acquittance of the one to whom the payment is made as provided in this section shall be a valid and sufficient release and discharge to the bank ... for all payments made on account of such deposit prior to the receipt by the bank ... of notice in writing signed by any one of the joint tenants not to pay the deposit in accordance with the terms thereof.

9. Article 3 of the Uniform Commercial Code describes a certificate of deposit as "an acknowledgement by a bank of receipt of money with an engagement to repay it...." § 400.3–104(2)(c), RSMo 1986. Subsection (3) of § 400.3–104 recognizes that not all certificates of deposit are negotiable instruments. The CD in *Kaw Valley State Bank* was not a negotiable instrument, 567 S.W.2d at 712; nor is the one in the case before us.

10. In its appellant's brief, the bank makes no argument that it should be absolved of any liability because the CD was not presented and surrendered until January 1988. Mercantile

The record is devoid of evidence of a claim by Jessica Lynn Brown to the money. On the facts before us, had Mercantile paid the proceeds of the CD to Thomas or Sofia Brown, it would have been shielded by § 362.470.1 from a claim by Jessica Lynn.

 The terms of the CD also protected Mercantile from liability. Legally, a certificate of deposit is a bank's promissory note, payable only according to its terms. *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d 710, 712 (Mo.App.1978).[9] The CD document stated that Mercantile "for all purposes, including endorsement, payment of principal and interest, presentation ... may deem and treat as the absolute owner hereof any one depositor named above...." Thus, under the terms of the CD—terms drafted by the bank—Mercantile had no liability to Jessica Lynn Brown had it paid Thomas Brown or Sofia Brown the proceeds of the CD upon presentation and surrender of the document, absent a request to the contrary by Jessica Lynn Brown pursuant to § 362.470.1.[10]

 We turn now to Mercantile's "stakeholder" argument, first as it relates to the Statler garnishment. "An execution arising from a judgment against the husband alone ordinarily cannot affect a bank account or other property held by a husband and wife as tenants by the entirety." *Vaughn*, 682 S.W.2d at 848; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Shackelford*, 591 S.W.2d 210, 215 (Mo. App.1979), and Annotation, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One of the Joint Depositors*, 11 A.L.R.3d 1465, 1484–85 (1967 & Supp.1991).

makes a passing reference to the lack of presentation and surrender in its respondent's brief concerning punitive damages, and the issue did arise at oral argument. By the terms of the CD, presentation and surrender of the document appears a condition precedent to Mercantile's obligation to pay the proceeds; however, we believe presentation and surrender, if required, were excused by the January 3, 1986, letter from Mercantile's attorney. *See Hernandez v. Westoak Realty & Inv., Inc.*, 771 S.W.2d 876, 879[3] (Mo.App.1989); *G.H. Craddock v. Greenhut Const. Co.*, 423 F.2d 111, 115[4] (5th Cir.1970).

In *Shackelford* a $100,000 U.S. Treasury note was issued to "Robert L. Shackelford or Mrs. Mary Alice Shackelford or Mrs. Ann Long or the survivors or survivor." Robert and Mary Alice Shackelford were husband and wife; Ann Long was their daughter. The money used to purchase the note came from the sale of Robert and Mary Alice's farm. Subsequently, Robert borrowed $37,000 from a bank, pledging the U.S. Treasury note as security. Mary Alice did not sign the promissory note to the bank. Robert paid off the promissory note and retrieved the $100,000 treasury note. Four days later, Robert and Mary Alice, unaccompanied by their daughter, went to the bank to cash the treasury note. Robert and Mary Alice assigned the treasury note on the reverse; their daughter did not assign her interest. Instead of cashing the treasury note, the bank held it because the bank had been summoned by Merrill Lynch as a garnishee in aid of execution on a judgment against Robert individually.

The trial court in *Shackelford* concluded that Merrill Lynch had an immediate right to $9,164.80 of the proceeds of the treasury note and entered judgment for Merrill Lynch in that amount. The court of appeals reversed, holding that the presumption that the form in which the treasury note was issued created a tenancy by the entirety was not negated by the inclusion of a third party (their daughter) in the designation of ownership, the listing of the names of the three owners in the disjunctive rather than in the conjunctive, or the failure to identify the Shackelfords as "husband and wife." 591 S.W.2d at 213–14. These facts from *Shackelford* are remarkably similar to the facts before us.

The *Shackelford* court recognizes that the presumption of tenancy by the entirety can be rebutted "by acts and conduct of the parties inconsistent with that estate." 591 S.W.2d at 214. Mercantile advises us of no evidence to indicate the Browns engaged in "acts and conduct ... inconsistent with [a tenancy by the entirety] estate" nor does it point to any other evidence that would establish that the garnishment against Thomas Brown could have reached the CD.

Mercantile does not develop an argument in support of its assertion that it risked liability to Commerce if it paid the funds to Thomas or Sofia Brown. We deem such assertion abandoned.

We conclude the evidence supports a trial court determination that Mercantile breached the CD agreement, that Mercantile's performance was not excused, and that the Browns sustained monetary damages as a result.

## POINT II: ACTUAL DAMAGES

In Point II, Mercantile explicitly challenges the trial court's award of actual damages. It contends the evidence does not support an award of actual damages because the evidence "related only to special damages which were not pled and which were, therefore, beyond the scope of the pleadings, were timely objected to and such objection was sustained by the court."

■ Rule 55.19 requires items of special damages to be specifically stated in the pleadings. Special damages are "the natural but not necessary result of the wrongful act." *Parsons Const. Co. v. Missouri Pub. Serv. Co.*, 425 S.W.2d 166, 173 (Mo. 1968) (*citing* predecessor Rule 55.21). Special damages are those "which actually result from the act by reason of the special circumstances of the case and not as a necessary result of the act." *Porter v. Crawford & Co.*, 611 S.W.2d 265, 271 (Mo. App.1980). Special damages are "such as actually result from the commission of the wrong, but are not such a necessary result that they will be implied by law." *McMahon v. Kansas City Rys. Co.*, 233 S.W. 64, 66 (1921).

In contrast, general damages are the kind of damages most non-breaching parties would suffer in similar circumstances. *Hernandez*, 771 S.W.2d at 880. General damages are those which the law will impute as a necessary and logical consequence of defendant's wrongful act. *Parsons Const. Co.*, 425 S.W.2d at 173.

■ In their cross-claim the Browns pled only general damages. At trial, Mercantile objected to testimony about certain items of damages as being evidence of spe-

cial damages outside the scope of the pleadings. However, despite its assertion to the contrary in its point relied on, Mercantile's objection at trial to evidence of the difference between interest paid the Browns on the CD and interest they paid Commerce was "to the relevancy only." Thus Mercantile's claim that the trial court should have excluded such evidence as outside the scope of the pleadings is not before us; a party may not advance on appeal an objection different from that presented at trial. *Wilson v. Shanks*, 785 S.W.2d 282, 285 (Mo.banc 1990).

■ We also reject Mercantile's allegation that the trial court erred in admitting evidence of interest the Browns paid on $14,000 they borrowed from First Missouri State Bank after Commerce declined to advance additional funds. We believe the difference in the interest paid on the CD and the interest the Browns paid another bank for use of an amount of money equal to that represented by the CD was the kind of damage most non-breaching parties would suffer in similar circumstances. Thus, such damages were general in nature, and the trial court correctly overruled Mercantile's objection that such damages were outside the scope of the pleadings.[11]

■ Interest income lost by the Browns because they paid income taxes prematurely is another matter. Payment of income tax on the interest income reportedly paid the Browns was not a necessary result of Mercantile's actions. Even though Mercantile reported to the IRS that the interest had been paid to the Browns in 1986 and 1987 when, in fact, it had not been paid, that action alone did not necessarily trigger the Browns' tax liability. For example, if the Browns had little or no other income or had sustained losses which offset the interest income, they would have had no tax liability as a result of Mercantile's report of the income. The loss of interest on money which the Browns had to pay for income taxes, although a natural result of Mercantile's acts, was not "such a necessary result that they will be implied by

law." *McMahon*, 233 S.W. at 66. The damages were special ones that should have been pled and the trial court should have excluded the evidence because it was outside the scope of the pleadings. The trial court erred in awarding damages of $321.00 for interest income lost as a result of premature payment of income taxes.

### *POINTS III AND IV*

■ We reproduce in their entirety Mercantile's third and fourth points relied on.

 III. The court erred in awarding actual damages because the only proof of such damages was speculative, and without foundation.

 IV. The court erred in awarding actual damages because such award was against the weight of the evidence.

Points III and IV violate the requirements of Rule 84.04(d) that an appellant state *wherein* and *why* a challenged action or ruling is claimed to be erroneous. As noted earlier in this opinion, points relied on that do not comply with Rule 84.04(d) preserve nothing for review, and we are left to look to the argument portion of the brief to determine if there was plain error which would permit relief under Rule 84.-13(c). *Estate of Goslee*, 807 S.W.2d at 556. With respect to Mercantile's Points III and IV, we find no manifest injustice or miscarriage of justice, and Mercantile is entitled to no relief under the plain error doctrine.

### *POINT V: ATTORNEY FEES*

The trial court awarded Thomas and Sofia Brown attorney fees in the amount of $4,874. In Point V of its brief, Mercantile contends the award was erroneous because the attorney fees were incurred "as the result of the garnishment itself" rather than in "collateral litigation resulting from any act of Mercantile."

■ Missouri courts have historically adhered to the "American rule" that, with certain exceptions, litigants bear the expense of their own attorney fees. *County Court of Washington County v. Murphy,*

---

**11.** This rationale would likewise apply to evidence of the difference between the CD interest paid the Browns and the interest they paid Commerce, had Mercantile objected at trial that such evidence was outside the scope of the pleadings.

658 S.W.2d 14, 16 (Mo.banc 1983); *Mo. Damages,* § 19.2 (Mo.Bar 1988). Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits. *Arnold v. Edelman,* 392 S.W.2d 231, 239 (Mo.1965).

In the case before us, there was no contract provision regarding attorney fees, no applicable statute permitting their award, and the Browns' cross-claim against Mercantile was not a suit in equity. Therefore, for the Browns to recover attorney fees, the fees must have been incurred in collateral litigation.

■ The appellate courts of this state have followed the rule that "[w]here ... the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees ... are proper items of damages." *Johnson v. Mercantile Trust Co.,* 510 S.W.2d 33, 40 (Mo.1974); *Myers v. Adler,* 188 Mo.App. 607, 616, 176 S.W. 538, 541 (1915). However, for a party to recover attorney fees under the collateral litigation exception to the "American rule," that party must have incurred the fees as a result of suing, or being sued by, an outside third party. *Ohlendorf v. Feinstein,* 697 S.W.2d 553, 556 (Mo.App.1985); *Mo. Damages,* § 19.15 (Mo.Bar 1988).

■ From the record in this case, we conclude that the "collateral litigation" exception does not apply. The evidence about the attorney fees for which the Browns were awarded reimbursement came in the form of testimony from Thomas Brown in response to these questions:

Do you recall the attorneys to whom you paid funds relative to your attempt to get the Mercantile Bank to release the CD and in litigating this question with them?

. . . .

And have you paid anyone else any funds related to this claim against Mercantile Bank?

. . . .

Did you request of our firm an allocation of what fees were allocated or attributable to this counterclaim [sic] against Mercantile?

It is apparent from these questions that all the evidence concerning the Browns' attorney fees concerned litigation between the Browns and Mercantile Bank. There was no evidence of attorney fees incurred as a result of suing, or being sued by, an outside third party. In accord with the above-stated principle from *Ohlendorf,* 697 S.W.2d at 556, we hold that the Browns' attorney fees were not incurred in collateral litigation, and we reverse that part of the judgment which awarded attorney fees to them.

## CASE NO. 17381: BROWNS' APPEAL

*PUNITIVE DAMAGES*

■ In their single point on appeal, Thomas and Sofia Brown contend the trial court erred in not awarding them punitive damages because the "overwhelming weight of the evidence demonstrated that [Mercantile's] breach of its contractual and fiduciary relationship was calculated, flagrant and in disregard of its obligations of trust." We disagree and affirm the trial court's judgment denying punitive damages.

We have already determined that this is a breach of contract case. The general rule is that punitive damages may not be recovered in a breach of contract action. *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 902 (Mo. banc 1990). *Peterson* reiterates the two exceptions to the general rule: (1) where the breaching party's conduct, apart from an intentional breach of contract, amounts to a separate, independent tort, and (2) where the breach of contract is coupled with violations of a fiduciary duty. *Id.* at 902–03. The latter exception is limited to those cases in which the fiduciary has breached a "public" trust. *Id.* at 903.

" 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' " *Burnett v.*

*Griffith,* 769 S.W.2d 780, 789 (Mo.banc 1989) *quoting Restatement (Second) of Torts,* § 908(2) (1979). An award of punitive damages is never a matter of right; whether punitive damages are awarded is a matter within the discretion of the trial court. *Creamer v. Banholzer,* 694 S.W.2d 497, 499 (Mo.App.1985). We review for an abuse of trial court discretion. *Id.*

We have already stated our conclusion that the Browns have not shown the existence of a fiduciary relationship between them and Mercantile. Nor do they point to evidence of outrageous conduct, independent of an intentional breach of contract, that rises to the level of an independent tort. We conclude the trial court did not abuse its discretion in refusing to award punitive damages.

It is our duty to dispose of this case unless justice requires otherwise. Rule 84.14; *Assemblies of God v. Hendricks,* 807 S.W.2d 141, 145 (Mo.App.1991). We reduce the award of actual damages in favor of Thomas C. Brown and Sofia Brown against Mercantile by $321 to $4600.86. We reverse the award of attorney fees to the Browns. As modified, the judgment is affirmed.

MAUS and MONTGOMERY, JJ., concur.