Charles O'REILLY and Mary Beth O'Reilly, Plaintiffs–Respondents,

v.

Morris L. DOCK, Defendant–Appellant.

No. 20407.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 23, 1996.

Motion for Rehearing or Transfer Denied Oct. 15, 1996.

Gary E. Bishop, Springfield, for Defendant–Appellant.

James R. Fossard, Pratt, Fossard and Rahmeyer, Springfield, for Plaintiffs–Respondents.

SHRUM, Judge.

This case presents questions about the application and interpretation of statutes of limitations in a contract dispute.

Plaintiffs sought to recover damages from Defendant for his failure to build an addition to their house according to the terms of their contract.[1] The trial court found that Defendant had installed certain windows with improper flashing or no flashing, that this defect caused certain windows to leak, and that water damage resulted "which was apparent more than five years before suit was filed." On those findings, the trial court ruled that Plaintiffs were not entitled to recover "any damage that may have occurred as a result of the leaking in the window[s] [as it] is barred by the statute of limitations...." See § 516.100 and 516.120.1.[2] Plaintiffs did not appeal from that portion of the judgment.

Additionally, the trial court found that Defendant breached the contract by not building a crawl space beneath the addition of the size specified in the plans and by not providing footings of the depth specified. It also found that Plaintiffs did not know about and could not "reasonably have ascertained those breaches." The trial court awarded to Plaintiffs those "items of damages ... necessary ... to correct the breach of contract that [the court has] described[,]" which it determined to be $6,180.24. Defendant appeals from that portion of the judgment.

In his first point, which we find dispositive, Defendant charges that the trial court erred because the damages awarded were "both sustained and capable of ascertainment more than five ... years" before suit was filed, hence they too were barred by the five-year statute of limitations.

We reverse the judgment.

---

1. Collectively we refer to Charles O'Reilly and his wife, Mary Beth, as Plaintiffs. When necessary to refer to them individually we use their first names. We do so without intending disrespect.

2. All statutory references are to RSMo 1994 unless otherwise noted.

## FACTUAL BACKGROUND

In March, 1983, Plaintiffs contracted with Defendant for the latter to make certain renovations and changes to Plaintiffs' home. The contract documents included certain plans and specifications prepared by Plaintiffs' architect. In part, Defendant was to rebuild and add onto the front or north part of Plaintiffs' house from "the roof down to the foundation." The work was completed by September 8, 1983.

The construction plans specified neither a crawl space entry point nor air vents in the foundation wall beneath the north addition, and consequently the addition was built without those features.

As part of the renovation, a large number of wooden windows were installed on the north side. Shortly after the work was done, Plaintiffs discovered water which had leaked through some windows and onto window sills inside the house. Both Plaintiffs testified that when the leaks were found, Defendant was notified. They testified that he responded by recaulking the entire window bank. According to Plaintiffs, the initial repair stopped the flow of water to the inside of the house. Nevertheless, during routine maintenance in 1986, carpenters told Plaintiffs that the window frames had rotted excessively. From 1986 onward, Plaintiffs repeatedly attempted to remedy the window leaks—without success—by painting, caulking, and replacing window sashes. Charles testified that carpenters who worked on the windows in 1987 and 1988 told him that there was "some kind of a moisture problem" around the windows. However, they were unable to tell him what was causing the problem. As Charles explained it, the carpenters had tried to find the problem but reported back to him that they could not "get under there and take a look at it." Charles also recounted at trial that a mildew smell in the house progressively worsened until 1989 or early 1990 when they installed a dehumidifier. Plaintiffs' use of a dehumidifier stemmed from the recommendation of a heating and air conditioning installer who told them in 1989 that they had a "severe moisture problem" in the front part of their house. Charles testified that the air conditioning man also reported his inability to assess the problem because he could not "crawl up in under there."

By March, 1992, Plaintiffs "wanted to replace that whole bank of windows and solve that problem there in the front of the house." To accomplish that end they hired Ronald Middleton, a residential builder. Middleton testified that on initial inspection, he found no "noticeable evidence of leaks or defects in the structure" and no "apparent problems" with Defendant's work. However, upon removing the brick and styrofoam sheeting, he discovered extensive rot damage in the wooden rim joists and sill along the north wall area. Middleton testified that as the work progressed he concluded that the windows "were improperly flashed at the top" and that water that came in the window area traveled in the wall cavity and ended up "in and around and under the window [area]." He also testified that "[t]he thing that complicated [the window leak problem] considerably was the fact that ... there was no crawl space basically under the house." He characterized the lack of crawl space as a "faulty construction practice." Middleton explained the significance of the crawl space defect thusly: "[E]ven if there had ... been ... foundation vents, which there were not, to provide ventilation, the [incoming water] ... was ending up ... under the window ... [where] the joists were sitting on the ground or within four inches of the ground...."

Plaintiffs' expert witness, engineer Saul A. Nuccitelli, testified that Defendant breached both a contract requirement and good building practice by building with only a four to eight inch crawl space rather than a minimum twelve inch space. He explained that the twelve inch requirement provides proper air ventilation between the ground and the woodwork and to build with less space, as Defendant did, "allows the moisture in the soil to be very close to your lumber and timber and it starts ... causing problems." Nuccitelli testified that the area along the north wall was a little bit lower than the rest, apparently because of excavation for duct work. He found that the duct work had been insulated; consequently, the water that collected in this low area tended to keep the insulation wet. Continuing, he testified that

the insulation had acted "as a wick effect ... to transfer the water at the ground level on up into and around the lumber at that front portion of the north wall."

Plaintiffs' experts, Nuccitelli and Middleton, agreed that window leaks were the source of the excessive water beneath Plaintiffs' house, and but for the excessive water, the rotting would not have occurred.

## DISCUSSION AND ANALYSIS

■ As mentioned earlier, Defendant's first point charges that the trial court erred in awarding damages because Plaintiffs' loss was "both sustained and capable of ascertainment more than five ... years prior to the filing of the petition and [their claim is] thus time barred by §§ 516.120 and 516.100."

With exceptions not applicable here, §§ 516.100 and 516.120.1 mandate that all contract actions must be commenced within five years "after the causes of action shall have accrued." To determine when a cause of action has accrued, § 516.100 provides:

> "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but *when the damage resulting therefrom is sustained and is capable of ascertainment*, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." (Emphasis added.)

However, quoting the statute does not end the analysis. As this court recently observed: "Our courts ... have never precisely defined the 'capable of ascertainment' language in § 516.100...." *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 395 (Mo.App.1996).

Here, the trial court interpreted the "capable of ascertainment" language as applying both to the loss suffered and the wrong committed. Thus, it found that Plaintiffs' claim for window-rot damage was barred because that damage "was apparent more than five years before ... [suit was filed]." Contrarily, the trial court found that the statute of limitations was tolled under § 516.100 as to other damages because Plaintiffs did not

know of and could not "reasonably have ascertained" Defendant's breach of contract regarding crawl space until 1992. On appeal, Defendant does not challenge the latter as an erroneous declaration or application of the law; rather his only argument regarding the limitations issue is that all of Plaintiffs' loss was ascertainable more than five years before the suit was filed and was thus time barred.

Preliminarily, we consider the trial court's reasoning rather than Defendant's first point. We do so because we are to sustain the judgment of the trial court if the result was correct on any tenable basis. *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 334 (Mo.App.1991).

There are Missouri cases that interpret the statutory "capable of ascertainment" language as applying both to the wrong committed and to the loss suffered. Cases that adopt that view or variations thereof include: *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143 (Mo.1967); and *Thorne v. Johnson*, 483 S.W.2d 658 (Mo.App.1972). As noted in *Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 684 S.W.2d 858 (Mo.App.1984) and *Arst v. Max Barken, Inc.*, 655 S.W.2d 845 (Mo.App.1983), *Krug* and *Thorne* involve layman/expert situations in which plaintiffs who were not capable of ascertaining their injuries hired experts to ascertain them, and those experts nonetheless failed to ascertain the damages. *Anderson* at 862; *Arst* at 847. The reasoning for the expanded interpretation of the "capable of ascertainment" language in such cases is explained by our Supreme Court in *Krug*:

> "[T]he rationale of the cases involving delayed [manifestation of] injuries caused by wrongful conduct which was unknown to plaintiff at the time of the invasion of his rights is 'that a person must have some notice of his cause of action, an awareness that either he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him, before the statute can begin to run.'" (citation omitted).

416 S.W.2d at 150.

■ However, the foregoing layman/expert cases present unique factual situations.

In most breach of contract or breach of duty cases, plaintiffs can themselves ascertain their own injuries. *Anderson,* 684 S.W.2d at 862. When the latter factual situation exists, it is clear that under the usual construction of § 516.100, notice or discovery of the alleged wrongful act is not an element of the statute's operation. *See generally, Jepson v. Stubbs,* 555 S.W.2d 307, 312–13 (Mo.banc 1977); *Chemical Workers Basic Union, Local No. 1744 v. Arnold Sav. Bank,* 411 S.W.2d 159, 163–65 (Mo.banc 1966). For example, in *Arst,* the plaintiff attempted to sue his contractor for cracks in the foundation of his home. The plaintiff saw the cracks in 1969 but waited until 1979 to hire someone to figure out the exact cause of the cracks, and then tried to sue. With those facts before it, the *Arst* court found no "delayed manifestation of injuries" as existed in *Krug* and *Thorne.* Consequently, it found as a matter of law that the statute of limitations had run before the suit was filed. 655 S.W.2d at 848[6].

The case *sub judice* does not present a situation analogous to those in *Krug* and *Thorne.* Unlike the injured parties in those cases, Plaintiffs were capable of ascertaining some loss from Defendant's breach of contract more than five years prior to filing suit. That fact is conclusively established by the trial court's unchallenged adjudication that Plaintiffs' claim for damages due to leaks in the windows was time barred. To the extent that the trial court interpreted § 516.100 as making notice or discovery of Defendant's wrongful acts an element of the statute's operation, it was an erroneous declaration and application of the law. Consequently, the trial court's finding that Plaintiffs did not know about and could not "reasonably have ascertained" the breaches of contract pertaining to the crawl space and foundation does not provide a tenable basis for affirming the judgment. We turn now to Defendant's first point relied on and consider it in light of the following.

■ Where, as in this case, the persons who claim they have suffered a loss are capable of ascertaining their injuries or damages without turning to an expert, Missouri courts read the word "ascertain" in § 516.100 as "referring to the fact of damage, rather than the precise amount." *M & D Enterprises,* 923 S.W.2d at 394 (citing *Dixon v. Shafton,* 649 S.W.2d 435, 438 (Mo.banc 1983)). The statute only requires that "some damages have been sustained, so that the claimants know that they have a claim for some amount." *Dixon,* 649 S.W.2d at 439. The foregoing is the applicable rule when the damage is to a residence and allegedly stems from defective workmanship. *Hasemeier v. Metro Sales, Inc.,* 699 S.W.2d 439, 441 (Mo. App.1985) (defective construction of house); *Lato v. Concord Homes, Inc.,* 659 S.W.2d 593, 595 (Mo.App.1983) (stopped-up sewer).

■ "When the *fact of damage* becomes capable of ascertainment, the statute of limitations is put in motion." *M & D Enterprises,* 923 S.W.2d at 394. Mere ignorance on the part of a plaintiff does not toll the statute of limitations where reasonable diligence on his or her part would have revealed the injury or wrongful conduct. *Chemical Workers,* 411 S.W.2d at 165.

Here, the trial court found that "[w]ater damage was apparent more than five years before the time [the] action was filed." Based on that finding, the trial court concluded: "[A]ny damage that may have occurred as a result of the leaking in the window is barred by the statute of limitations *but that doesn't end the problem.*" (emphasis ours). However, the trial court misinterpreted the law by failing to determine that its inquiry should have concluded at that point. The trial court's qualifying remark, as shown in italics, prefaces its finding that the statute was tolled as to damages attributable to the breaches of contract pertaining to the crawl space and footings because Plaintiffs could not "reasonably have ascertained those breaches." We have held that the latter was an erroneous declaration and application of the law.

■ The trial court's finding that some of Plaintiffs' "[w]ater damage was apparent more than five years before the time [the] action was filed" and its unchallenged conclusion that "any damage that may have occurred as a result of the leaking in the window is barred by the statute of limita-

tions" settles the matter. The evidence conclusively showed that water which leaked through the windows caused all of the damage. Plaintiffs knew for more than five years before they filed suit that there was damage being caused by window leaks, although they did not know the extent of the damage. Thus, while they were not aware of the precise amount of damage, they were aware of the fact of damage, which means that the damage they suffered was capable of ascertainment within the meaning of § 516.100.1. *See M & D Enterprises, Inc.,* 923 S.W.2d at 394. It follows that Plaintiffs' claims for all damages were barred by §§ 516.100 and 516.120.1. The trial court erred in ruling otherwise.[3]

The judgment for Plaintiffs is reversed.

CROW, P.J., and PARRISH, J., concur.

---

**3.** We do not ignore Plaintiffs' contention that § 516.097 is the applicable statute of limitations, not § 516.100 and .120. We have considered that argument and reject it. Section 516.097.4(1) provides that § 516.097 shall not apply if an action is barred by another provision of law. As the trial judge correctly found, the five-year statute, § 516.120, applies, because Plaintiffs' action was an action upon a contract. Moreover, as our supreme court has explained, § 516.097 is a statute of repose "enacted in response to case decisions . . . that had done away with the necessity of privity between the plaintiff and the architect, engineer or builder." *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 827 (Mo.banc 1991). That is not this case. Clearly there was a contract between Plaintiffs and Defendant, and this suit charged Defendant with breaching that contract. Section 516.097 does not apply here.