In the ESTATE OF John W. HARVEY, Deceased, Don Harvey, Personal Representative, Respondent,

v.

LUTHER COLLEGE, Appellant,

Lowry City Bank, and Jewell E. Love, Respondents.

No. WD 43327.

Missouri Court of Appeals, Western District.

Feb. 5, 1991.

James C. Johns, Clinton, for appellant.

Jeffrey L. Dull, Osceola, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

GAITAN, Presiding Judge.

This case involves the determination of ownership to a certificate of deposit between the estate of John W. Harvey and Luther College. The facts were stipulated to and will be referred to as needed. This case was tried to the court which found in favor of the estate. We affirm.

John W. Harvey died intestate on December 3, 1987. On November 12, 1982, Jewell E. Love (Jewell) and John Harvey (John) were married. A certificate of deposit, # 1115 (# 1115), was issued by the Lowry City Bank in Lowry City, Missouri, to John and Jewell Harvey in the original amount of $39,000.00. On June 13, 1986, John executed an assignment of interest to Luther College. The interest assigned included two certificates of deposit, # 1513 ($8,000) and # 1115 ($39,000). Only John signed this assignment and it purported to assign only his interest.

John and Jewell received a marital dissolution on July 22, 1986. Pursuant to the dissolution decree, John received # 1115 which was endorsed to him exclusively at that time. In August of 1986, the actual physical possession of # 1115 was delivered by John to Luther College. On November 1, 1986, John returned to Luther College and executed a revocable trust agreement to Luther College. This trust was to be funded by cash in the amount of $50,631.72 and by # 1115. On April 23, 1987, John informed the Lowry City Bank not to cash the C.D. without his permission, and this instruction was written across the C.D.

John did not inform the Lowry City Bank that he had assigned his interest in # 1115. On March 22, 1988, the estate of John W. Harvey filed a petition for discovery of assets. In this petition the estate claimed ownership of # 1115. The original of # 1115 remains in the hands of Luther College with an increased value of $63,545.23.

The Lowry City Bank, not wishing to become involved in litigation between the estate of John Harvey and Luther College, interpleaded and paid the cash value of # 1115 into the court.

The scope of our review is limited to determining whether the judgement of the trial court is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Due deference will be given to the trial court's resolution of conflicting evidence. *Citizen's State Bank of Marshfield v. Friendly Ford, Inc.*, 686 S.W.2d 565, 567 (Mo.App.1985).

Pursuant to Mo.Rev.Stat. §§ 473.270, 473.340 (1986), Don Harvey, personal representative of the estate of John W. Harvey, is authorized and required to collect all money and debts of every kind due to John. He is also authorized to commence any and all actions necessary, including a petition to discover assets or to determine ownership of any property claimed to be an asset of the estate.

## ASSIGNMENT

The assignment of interest of June 13, 1986, was executed by John only. This C.D. had been issued on November 22, 1983, to "John W. Harvey or Jewell E. Harvey." The C.D. was held by the Harveys in a tenancy by the entireties on the date of the assignment by John. Each of the marital partners owned the entirety of the funds on deposit but neither held a separate, divisible interest. Consequently, an attempted conveyance by one spouse alone of his or her interest is ineffective; it is a nullity by law. *Beamon v. Ross*, 767 S.W.2d 580, 582 (Mo.App.1988); *see also Ronollo v. Jacobs*, 775 S.W.2d 121, 123–24 (Mo. banc 1989). The attempted assignment herein fails because John could not convey Jewell's interest and therefore no transfer occurred.

Additionally, evidence of Mr. Harvey's acts subsequent to his execution of the

assignment may call his own intent into question. He later executed a trust instrument purporting to convey #1115 to the trustees thereof, an act arguably inconsistent with his intent to assign. If the assignment was considered valid, John would have no interest in #1115 to transfer into trust. Following the execution of the trust agreement, Mr. Harvey caused the notation "[d]o not cash without the permission of John Harvey—4/23/87" to be added to the face of the C.D. Mr. Harvey's intention was anything but clear.

For the above reasons, the assignment of interest dated June 13, 1986, was then, and is now, ineffective to convey any interest in the funds represented by #1115 to Luther College.

## EQUITABLE ASSIGNMENT

■ Luther College argues that even if the attempted written assignment is ineffective at law, John later obtained a dissolution, delivered #1115 to Luther College, and therefore equity should enforce these acts.

An equitable assignment arises upon the existence of three elements: (1) an intention to assign, (2) an assent to receive, and (3) consideration. *Miller v. Heisler*, 187 S.W.2d 485, 488 (Mo.App.1945). Here, the intention of the assignor is not clear nor was there consideration. Hence, no equitable assignment exists.

The assignment of interest recites no consideration and no evidence of any consideration, reliance, or detriment of any kind, at anytime, was offered by Luther College. Luther College paid interest to John and his estate. Interest earned on the C.D. funds, however, remain today with the principal at the bank. This lack of consideration weighs against the claim of assignee Luther College.

Simple delivery of a non-negotiable C.D. is not enough to transfer a right to the fund. The earlier written assignment is ineffective to create in Luther College any right to the fund. Presentation of #1115, the written assignment, and the decree of dissolution would not bind the bank to make payment to Luther College. John would still possess dominion over the fund. The most which could be said of the written assignment and the C.D. delivery is that they indicate John's interest: Even so, he later added the notation "[d]o not cash without permission of John Harvey—4/23/87."

For the aforesaid reasons, the doctrine of equitable assignments is not warranted.

## RATIFICATION

■ Luther College argues that John, by his subsequent physical delivery of #1115 and execution of the trust agreement, ratified the earlier assignment. With ratification, one is bound because he intends to be, while one is bound by estoppel because one party will be prejudiced and defrauded unless the law binds another. 28 Am.Jur.2d *Estoppel and Waiver* § 31 (1966). The assignment failed for lack of the spouse's signature, not lack of proof of intention. Supplying evidence of John's subsequent intention does not remedy this.

Luther College argues that John reaffirmed his earlier intention at a time when his spouse's signature was no longer required due to the intervening dissolution. This is tantamount to asserting that an assignment may be valid contingent upon the happening of future events ... a dissolution and a reaffirmation of intent by physical delivery of the C.D. This is not the law. *Kansas City v. Milrey Dev. Co.*, 600 S.W.2d 660, 664 (Mo.App.1980).

The assignment was ineffective because the dissolution had not occurred, regardless of what John intended and no matter how his intent was evidenced.

Secondly, John's intentions are not clear. Delivery of #1115 to Luther College might be seen as such, but execution of the trust agreement presupposes the contrary in that John would then have to own the C.D. to place it in trust. Finally, when John caused the notation "[d]o not cash without permission of John Harvey—4/23/87" to be placed on the C.D., his intent was apparently not to be bound by the assignment.

In summary, the evidence of John's acts subsequent to the execution of the assign-

ment falls short of establishing clearly and convincingly that his intent was to be bound by the assignment. Even if it did establish such an intent, proof of John's intent does not cure the defect in the assignment, which was a lack of intent to assign on the part of Jewell.

## TRUST AGREEMENT

On November 1, 1986, John executed the John W. Harvey revocable trust agreement. The agreement purports in paragraph 1.1 to transfer, convey, and deliver to the trustee(s) all property listed on schedule A, which includes # 1115. The trustees specified in the agreement are John W. Harvey and Luther College. There is no claim that the trust agreement is invalid. The issue is whether it was funded, at least in part, by # 1115.

On April 25, 1987, John caused the words "[d]o not cash without permission of John Harvey—4/23/87" to be added to the face of the C.D. The C.D. thereafter has remained unchanged.

 To create a valid inter vivos trust there must be a beneficiary, a trustee, a trust corpus, and actual delivery, assignment or conveyance of legal title to the corpus to the trustee. *Atlantic Nat'l Bank v. St. Louis Union Trust Co.,* 357 Mo. 770, 777, 211 S.W.2d 2, 5 (1948). The settlor must presently and unequivocally divest himself of the full legal and equitable ownership of the trust corpus. 76 Am.Jur.2d *Trusts* § 35 (1975). The settlor must relinquish complete dominion and control over the trust assets before they will become a part of the trust corpus.

There is some relaxation of these requirements where the settlor is the sole trustee. Complete divestiture of title or relinquishment of control over the assets placed in trust may not be required. A declaration of trust may suffice. *Gardner v. Bernard,* 401 S.W.2d 415, 421 (Mo.1966). John, however, was not sole trustee, but was a co-trustee with Luther College. Accordingly, a transfer of the assets held by John W. Harvey individually was necessary in order to vest title in the co-trustees. It

is undisputed that the name "Luther College," the other co-trustee, was never placed on # 1115. Luther College acquired no right to the C.D. funds by operation of the trust agreement alone because they were still in no way privy to the C.D. deposit agreement between John and the bank. Under the law, the trust agreement conferred no right upon Luther College to withdraw or take possession of the C.D. funds. The funds, even after execution of the trust agreement, remained within the control of John to the exclusion of Luther College.

Luther College's position thereafter failed to improve. Not only did no subsequent occurrence improve their claim to the C.D. funds, but matters deteriorated when John caused the notation "[d]o not cash without permission of John Harvey—4/23/87" to be placed on the C.D. John, by this act, reasserted his individual retention of exclusive control over the C.D.

Finally, Luther College made no payment to John representing interest earned on # 1115. However, the trust agreement provided that the income from trust property would be paid to John during his lifetime. Evidently, neither Luther College nor John believed the C.D. to be a part of the trust property as no payment was either made or demanded.

For all of the above reasons, # 1115 is determined not to be an asset of the John W. Harvey revocable trust as described by the trust agreement executed by John on November 1, 1986. Luther College, by virtue of said agreement, has acquired no right to funds flowing from # 1115.

 Certificate of deposit # 1115 has the words "non-negotiable" printed on its face. This C.D. is not a negotiable instrument and therefore, delivery, or endorsement and delivery, were insufficient to transfer John's interest. Mo.Rev.Stat. § 400.3–202 (1986). Consequently, John's delivery of the C.D. to Luther College in August of 1986, transferred no interest as a completed gift or otherwise.

As to the question of what law applies to issues raised by the assignment and the trust agreement, we find that Missouri law is controlling. Mo.Rev.Stat. § 400.4–102(2) (1986).

The judgment of the trial court is affirmed.

All concur.