**WASHINGTON COUNTY MERCANTILE BANK, a Missouri Banking Corporation, Plaintiff–Respondent,**

v.

**Ruth KENNEDY, Co–Defendant–Respondent,**

**and**

**Shirley Dalton, Co–Defendant–Appellant.**

No. 62558.

Missouri Court of Appeals, Eastern District, Division Seven.

June 23, 1993.

Colson, Wagner & Ray, Gary W. Wagner, Farmington, for Shirley Dalton.

Michael L. Maynard, Flat River, for Ruth Kennedy.

Albert G. Tindall and Troy K. Hyde, Potosi, for Washington County Mercantile Bank.

KAROHL, Chief Judge.

Washington County Mercantile Bank filed an interpleader petition pursuant to Rule 52.07 against defendants Ruth Kennedy and Shirley M. Dalton. The subject of the lawsuit is a $15,000 certificate of deposit purchased by Thomas E. Portell on July 19, 1988. Defendant Ruth Kennedy, who was engaged to marry Portell, is a joint depositor on the certificate and claims ownership as a surviving joint tenant. Defendant Shirley M. Dalton claims ownership because Thomas E. Portell, her father, attempted to remove defendant Kennedy's name and substitute defendant Dalton's name as the joint tenant on the certificate of deposit. Portell's request in the form of a letter to the bank was made on March 16, 1989, nine months after the certificate was issued. The bank refused to honor the request. The term of the certificate was for fifteen months, and the request was not made by all joint depositors. Furthermore, the certificate was never presented to the bank. Thomas E. Portell died on March 19, 1989. Defendant Dalton filed a counterclaim against the bank for refusing to honor the change request. After the case was tried to the court, a judgment was entered in favor of defendant Kennedy as surviving

joint tenant and against defendant Dalton on her claim of ownership and her counterclaim. Dalton appeals the judgment in favor of Kennedy's claim, but not the counterclaim. We affirm.

Before reaching the merits of this appeal, it is not clear that Dalton has standing to make a claim in her own name or file a counterclaim. Dalton's standing, however, was never contested before the trial court. If there is a breach of contract claim, it belonged to Portell or his estate, not Dalton. The bank never entered into a contract with Dalton, even if she was subsequently aggrieved by the bank's refusal to honor the request for the change in ownership. The question of standing was neither briefed nor argued by the parties. Since the only issues before this court were interpleader issues, we look to the merits of the dispute.

■ In this court-tried case, we review according to Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will uphold the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

The facts giving rise to the dispute are as follows: On July 19, 1988, Portell purchased a certificate of deposit in the amount of $15,000 from Washington County Mercantile Bank. Kennedy was present and also signed documents where required. The certificate was issued in the name of "Thomas E. Portell or Ruth Kennedy, EOS [either or survivor]....." The penalty disclosure statement accompanying the certificate stated, *inter alia*, that "in the case of Certificates of Deposit held in the names of two or more persons, ... early withdrawals must have the endorsement of all depositors." The signature card for the certificate stated, *inter alia*, that the money in the account was "payable to either or the survivor."

On March 15, 1989, while hospitalized, Portell executed a letter to the bank requesting the replacement of Kennedy's name on the title of the certificate with the name of his daughter, Shirley Dalton. The request was typewritten, signed with an "X" on the line for Portell's signature, and notarized. The next day, Dalton delivered the request to the bank. The bank refused to honor the written request, because to do so would be "against bank policy." On March 19, 1989, Portell died. Subsequently, both Kennedy and Dalton asserted claims to the proceeds of the certificate.

The bank filed its petition of interpleader to resolve the conflicting claims. The trial court ruled in favor of the bank as against Dalton's counterclaim. The trial court also ruled Kennedy was the lawful owner of the certificate and ordered the bank to transfer it, less court costs and attorney fees, to Kennedy.

Dalton argues the court erred in finding the bank had not breached its contract to Portell. We have previously questioned her standing to raise this issue. In support of this position, Dalton contends (1) Portell was not bound by the penalty disclosure statement; (2) the plain language on the signature card, read in conjunction with the certificate and the penalty disclosure statement, would have permitted a transfer of title on written request; and (3) the bank was not entitled to interpleader, because the bank became liable to Dalton prior to the demand by Kennedy.

■ A certificate of deposit is a note of the bank, payable only according to its terms. *Western Casualty and Surety Co. v. First State Bank of Bonne Terre*, 390 S.W.2d 913, 918 (Mo.App.1965). Generally speaking, the relation of a bank to its depositor is that of debtor to creditor, subject to contract. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169, 173 (Mo.App. 1982). It is the clear and unambiguous language of the contract that controls ownership of the account. *In re Huskey v. Monroe*, 674 S.W.2d 205, 213 (Mo.App. 1984).

■ The judgment in favor of Kennedy is supported by the contract. The certificate reads, "Payable to Depositor(s) ... upon the surrender of this Certificate ... 15 months after date ... This certificate ... will not be paid prior to maturity." The penalty disclosure statement, which was issued with and attached to the certifi-

cate, per federal regulation and bank policy, contained the following language: "In the case of Certificates of Deposit held in the names of two or more persons, such early withdrawals must have the endorsement of all depositors." The signature card, which both Portell and Kennedy signed, read as follows: "The undersigned hereby opens an account ... by the purchase of a Savings Certificate subject to the present and future rules and regulations of ... [the] Bank ... Payment of the Certificate may not be made prior to maturity except with the consent of the Bank which may be given only at the time such request for payment is made ..." Thus, the terms of the certificate, penalty disclosure statement, and signature card prohibited early withdrawal without the signatures of both Portell and Kennedy and consent of the bank. Although some exceptions were contained in the disclosure statement, they are not relevant here.

Dalton's arguments are, therefore, all without merit. First, although Portell never signed the penalty disclosure statement, which required both tenants' signatures for early withdrawal, he did sign the signature card and was thereby bound by the terms of the certificate, which allowed payment of the funds in the account only on surrender of the certificate at maturity. The certificate was neither tendered nor mature in this case. Therefore, Dalton's first argument fails.

Dalton's second argument likewise fails. As set forth previously, the certificate of deposit, signature card, and penalty disclosure statement formed a contract that prohibited early withdrawal without the signatures of both joint tenants. A change in title is tantamount to terminating the account and replacing it with a new one. *McGee v. St. Francois County Savings and Loan Ass'n*, 559 S.W.2d 184, 188 (Mo. banc 1977). Therefore, replacing Kennedy's name with Dalton's would have effectively involved the termination of the account, which the contract prohibited, absent both Portell's and Kennedy's signatures.

■ The trial court also correctly ruled the bank was entitled to interpleader. Interpleader is appropriate where persons have a claim against a common stakeholder and those claims are of such a nature that the stakeholder may be exposed to double or multiple liability. *General American Life Insurance Co. v. Wiest*, 567 S.W.2d 341, 344 (Mo.App.1978). The stakeholder is not obligated to determine the merits of the claimant's suit. "[T]he right to interpleader depends upon whether the stakeholder has a good faith fear of adverse claims, regardless of the merits of those claims or whether the stakeholder himself believes them to be meritorious." *Id.*, fn. 1. The bank faced adverse claims from both Kennedy and Dalton. Regardless of the merits of those claims, the bank had a good faith fear of double liability. Therefore, the bank's only relief was to file an interpleader action, as proscribed in Rule 52.07 V.A.M.R.

Dalton has also argued the trial court erred in ruling that the controlling statute, § 362.470 RSMo 1986, does not authorize the transfer of title on written request of the depositor.

■ While we need not reach this alternative argument, we note the difference between § 362.470, which governs joint accounts in business and financial institutions, and § 369.174 RSMo 1986, which governs savings and loan associations. The statutes are similar. But § 369.174 provides, "A person may be added or removed as the owner of an account upon the *written direction* of any owner of the account upon whose signature withdrawals may be made from the account." (Emphasis added.) This does not appear in § 362.470. The bank is a business or financial institution governed by § 362.470. Therefore, a joint tenant of an account at a banking or financial *institution does not have a statutory right to demand compliance with a written request to change title of the joint account.

Affirmed.

PUDLOWSKI and CRANDALL, JJ., concur.