In the ESTATE OF Rosamond D. HAT-TEN, Deceased, Lorin Van Drie and Janis Van Drie, Petitioners–Appellants,

v.

MERCANTILE BANK OF SPRING-FIELD, Successor Trustee, et al., Respondents.

No. 18523.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 16, 1994.

Motion for Rehearing or Transfer
Denied Sept. 7, 1994.

Application to Transfer Denied
Oct. 25, 1994.

Lorin and Janis Van Drie, pro se.

Clifford S. Brown, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for respondents.

PER CURIAM.

Petitioners Janis Van Drie and Lorin Van Drie filed this discovery of assets proceeding,

§ 473.340,[1] in the probate division of the Circuit Court of Christian County, in the Estate of Rosamond D. Hatten, Deceased. The petition alleged that certain items of personal property, which had been inventoried as an asset of the estate, had been transferred, prior to decedent's death, to a trust created by decedent during her lifetime and formed no part of the probate estate. After a lengthy nonjury trial, at which petitioners appeared and participated pro se, the court entered judgment denying relief on the petition. Petitioners appeal.

The petition named, as parties to the proceeding, Mercantile Bank of Springfield ("the bank"), "as successor trustee of the living trust agreement of Rosamond D. Hatten," Mercantile Bank of Springfield "as personal representative of the Estate of Rosamond D. Hatten, deceased," and others.

The trial court's judgment included the following:

"[T]he court finds petitioners fail on burden of proof that [the bank] accepted the estate inventoried assets into the 'Hatten Trust' in its capacity as Trustee, and that therefore the [inventorying of the assets] in the 'Hatten Estate' is proper and correct and that no additional assets exist either in the Trust or the Estate."

Petitioners appeal.

In this court petitioners appear pro se. The sole point in their brief is that the judgment, including the quoted finding, is erroneous "in that (1) said finding is against the weight of the evidence, (2) it erroneously declares and applies the law, (3) it permits the personal representative to create a residuary estate by destroying the trust, and (4) it fails to give due consideration to the prior inconsistent statements of respondent's counsel."

"Parties representing themselves are bound by the same rules as parties represented by lawyers. *Snelling v. Jackson*, 787 S.W.2d 906, 907 (Mo.App.1990); *Snelling v. Stephenson*, 747 S.W.2d 689, 690 (Mo.App. 1988)." *Williams v. Shelter Ins. Co.*, 819 S.W.2d 781, 782[2] (Mo.App.1991). Parties who represent themselves "are entitled to no indulgence they would not have received if represented by counsel." *Wheadon v. Froelich*, 811 S.W.2d 817, 818 (Mo.App.1991).

Petitioners' brief in this court fails to comply with Rule 84.04 which deals with the contents of the brief for appellant. Rule 84.04(c) requires the statement of facts portion of an appellant's brief to be "a fair and concise statement of the facts relevant to the questions to be presented for determination without argument."

The statement of facts in petitioners' brief is 17 pages long. The first 3½ pages of that statement set forth certain matters, accompanied by specific page references to the legal file or the transcript. The remaining 13½ pages contain no page references. Those pages contain the following: a description of the condition of Janis Van Drie, who authored the brief, and the manner in which she has been "tormented by her oppressors over the past four years"; disparaging remarks concerning the trial judge; reference to a "blood-sucking lawyer" and "a filthy lawyer"; quotations from cited cases; references to "obvious fraud"; mention of Justice Harry Blackmun, Andrew Jackson, and Jesus.

Rule 84.04 requires that the brief for appellant contain an argument which shall substantially follow the order of "points relied on." Petitioners' brief contains no argument at all. It consists only of a jurisdictional statement, the defective statement of facts, and the point previously mentioned. The point itself is defective in failing to meet the requirements of Rule 84.04(d) as construed in *Thummel v. King*, 570 S.W.2d 679, 684–690 (Mo.banc 1978). See *Estate of Goslee*, 807 S.W.2d 552, 556 (Mo.App.1991).

With exceptions not applicable here, Rule 84.13(a) provides that allegations of error not briefed or not properly briefed shall not be considered in any civil appeal. Respondents have filed a motion to dismiss this appeal on the ground that petitioners' brief is deficient

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

in the particulars just discussed. The motion is meritorious, but this court in its discretion has concluded to examine the record on appeal, in light of the challenge attempted to be raised in petitioner's point, for possible plain error as that term is used in Rule 84.13(c). Plain errors, under that rule, are those "affecting substantial rights" and require a finding by this court "that manifest injustice or miscarriage of justice has resulted therefrom." No such error is here.

The following is a chronology of the significant events:

### March 8, 1984

Rosamond Hatten executed a "Revocable Living Trust Agreement." Also on this date Rosamond Hatten executed her "Last Will and Testament."

In the trust agreement, Rosamond Hatten was named Grantor and also Trustee. The bank was named "Successor Trustee." The document recited: Grantor has delivered and conveyed to the trustee "certain securities and other property ... described in Exhibit A";[2] the trust estate shall consist of the property described in Exhibit A, "together with any other securities or other property which may be transferred or conveyed to or deposited with said trustee by grantor or any other person"; during the life of grantor the trust shall be administered for the sole benefit of grantor; on the death of grantor the trustee was directed to distribute two described rings to named beneficiaries, cash gifts totaling $9,000 to four named beneficiaries, and the "remaining balance in trust" to "Christian County Humane Society, Inc."

The will of Rosamond Hatten appointed the bank as her personal representative. The will disposed of personal property not involved here. The residuary estate, real and personal, was given to the "then acting trustee" under the trust ... "to be added to the trust property and held, administered and distributed in accordance with the terms

of that agreement and any amendments made pursuant to its terms before my death."

### September 6, 1989

Rosamond Hatten executed a "First Amendment" to the trust. Under the amendment, the trustee was given authority to "pay and discharge all of grantor's legal debts" and certain changes were made with respect to the disposition of the two rings and cash gifts. The amendment further provided: *"Upon the death of Rosamond D. Hatten* the trustee is directed ..., and the balance in trust *as then constituted* shall be subject to the following:

"6. Grantor gives and devises her residential real property,[3] together with household contents such as furniture, furnishings, items of utility and decoration, bric-a-brac, china, and table utensils not otherwise disposed of [by the will] to Lorin and Janis Van Drie, husband and wife, ... but if both are then deceased, then said gift and devise shall lapse and shall then revert to the residuary estate.

"7. The remaining balance in trust, being the residual balance, less all proper deductions, shall be distributed to the Christian County Humane Society, Inc." (Emphasis added.)

### September 13, 1989

Rosamond Hatten resigned as trustee of the trust agreement and the bank became the trustee.

Also on this date Rosamond Hatten executed a document entitled "Limited Durable Power of Attorney." This document appointed Lorin Van Drie as her attorney "for me and in my place and name to do and perform the following acts and things: ... I now have a Revocable Living Trust Agreement in which I am now Trustee and Mercantile Bank of Springfield is Successor Trustee, and my said attorney shall have full authori-

---

**2.** Exhibit A has not been filed in this court, and the record makes it doubtful that it ever existed. Petitioners make no claim that the property in controversy here was described in Exhibit A.

**3.** The "residential real property" was not included in the inventory of the estate of Rosamond D. Hatten, deceased. Rosamond Hatten, by quitclaim deed, transferred title to her "residential real property" to the trustee during her lifetime. The real estate is not involved in this proceeding.

ty, in its discretion, to transfer, convey or assign to the then acting Trustee of said Revocable Living Trust any asset, real, personal or mixed, of any kind or character, and to execute any document, including but not limited to a stock power, affidavit, deed to real property or to mineral rights, whether in this or any other state...."

### September 27, 1989

Rosamond Hatten had a heart attack and was hospitalized.

### September 29, 1989

Conference at bank involving James Johnson (vice president and trust officer of bank), petitioner Lorin Van Drie, and Adelaide Jones (deceased at time of trial), during the course of which the contents of Rosamond Hatten's safe deposit box were inventoried. The happenings at this conference govern the disposition of this appeal and will be set forth below.

### October 9, 1989

Rosamond Hatten died.

### May 11, 1990

Christian County Humane Society, Inc. filed a suit against Lorin Van Drie, Janis Van Drie, Mercantile Bank of Springfield, and others, seeking to set aside the first amendment to the trust. After trial, a judgment was entered against plaintiff and in favor of defendants. An appeal to the Missouri Court of Appeals was filed by plaintiff and later abandoned.

### June 17, 1992

Instant proceeding filed. The allegations of the petition included the following:

"6. On September 29, 1989, Lorin Van Drie, acting under the authority of the Limited Durable Power of Attorney, transferred to the trust account of Rosamond D. Hatten all items of personal property, and quitclaim deed to residential real property, itemized on the inventory dated September 29, 1989. A true copy of same is attached hereto as Ex-

hibit D and is incorporated by this reference as if fully set forth herein." [4]

The scope of appellate review is limited to determining whether the judgment of the trial court is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976); *Estate of Harvey v. Luther College,* 802 S.W.2d 585, 586 (Mo.App. 1991). Due deference is given to the trial court's resolution of conflicting evidence. *Estate of Harvey,* at 588.

"A discovery of assets action, as its name implies, is a search for assets owned by the decedent at his death, and, thus, traditionally in these actions, the ultimate issue is whether title to the assets in question had passed from the decedent to another person prior to the former's death. In this context, the issue of the proper holder of title is considered to be an issue at law rather than equity." *Matter of Estate of Mitchell,* 610 S.W.2d 681, 684 (Mo.App.1980) (citing authorities).

In *Estate of Harvey,* the court said, at 588:

"To create a valid inter vivos trust there must be a beneficiary, a trustee, a trust corpus, and actual delivery, assignment or conveyance of legal title to the corpus to the trustee. *Atlantic Nat'l Bank v. St. Louis Union Trust Co.,* 357 Mo. 770, 777, 211 S.W.2d 2, 5 (1948). The settlor must presently and unequivocally divest himself of the full legal and equitable ownership of the trust corpus. 76 Am.Jur.2d Trusts § 35 (1975). The settlor must relinquish complete dominion and control over the trust assets before they will become a part of the trust corpus.

"There is some relaxation of these requirements where the settlor is the sole trustee. Complete divestiture of title or relinquishment of control over the assets placed in trust may not be required. A declaration of trust may suffice. *Gardner v. Bernard,* 401 S.W.2d 415, 421 (Mo.1966)."

In *Gardner v. Bernard,* the court said, at 421:

"There is no doubt that one may establish an oral, voluntary trust in personal property, and that he may constitute himself as the

---

**4.** Exhibit D is not attached to the petition filed in this court.

trustee. However, the intent must be clearly expressed by words or conduct or both, enforceable duties must be thus imposed, *the trust must be presently created,* and the object of the trust must be property in existence, ascertained or ascertainable; the declaration need not be in any particular form." (Emphasis added) See also *Newton v. Wimsatt,* 791 S.W.2d 823, 827[1] (Mo.App.1990).

"A trust res consisting of a present interest in property must be transferred to and vested in the trustee in order to create a trust. That is, while a settlor may make himself a trustee, and thus retain the legal title in whole or in part, or may make himself a beneficiary of the trust, and thus retain equitable ownership in whole or in part, it is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof.

"The required present and unequivocal disposition of the property in trust must constitute an actual carrying out and execution of the settlor's intent to create a trust by some proper transaction or mode, and it does not suffice to create a present trust that the settlor merely intends or manifests an intent to create a trust in the future." 76 Am.Jur. 2d, Trusts § 51.

■ By this proceeding, petitioners sought a determination that the "household contents" described in paragraph 6 of the First Amendment to the Trust were improperly inventoried as assets of the estate of Rosamond Hatten, deceased, for the reason that they are assets of the trust to be distributed by the trustee to petitioners on the death of Rosamond Hatten.

The first amendment to the trust deals with a situation arising on the death of Rosamond Hatten. By the first amendment, Rosamond Hatten did not create *at that time* a trust in favor of petitioners with respect to the household contents with herself as trustee. Paragraph 6 of the petition filed July 17, 1992, makes no claim that she did, and is inconsistent with such a claim. No such claim is argued here, for there is no argument at all.

The controlling issue is whether Lorin Van Drie, acting under the power of attorney given him on September 13, 1989, transferred the household contents to the bank as trustee at the time of the September 29, 1989, conference at the bank. As to that issue, the evidence was in conflict.

The participants in the September 29 conference were James Johnson, vice president and trust officer for the bank, petitioner Lorin Van Drie, and Adelaide Jones, now deceased. The record has no testimony, pretrial or trial, of Adelaide Jones. Both James Johnson and Lorin Van Drie were called as witnesses by petitioners. Their testimony included the following:

**James Johnson:** "On September 29, Lorin Van Drie, Adelaide Jones and I made an inventory of the safety deposit box of Rosamond Hatten. The certificates of deposit were already in the trust estate. Lorin wrote the bank a check for $4,500 for transfer into the trust. The trust corpus consisted of $26,274.65. Title to Rosamond's automobile was in the safety deposit box and Lorin gave the title to us. Lorin did not say the car was to be added to the trust estate. We did not put the car into the trust because we were not instructed to do so. Also in the box were photographs of Rosamond's household furnishings and an appraisal of them. I was not instructed by Lorin to add those to the trust. If someone asks us to add personal property to the trust, we have them sign a bill of sale. Since no bill of sale was signed, I conclude that it was not asked. Exhibit D is an inventory showing the contents of Rosamond's safety deposit box. It is signed by me and Lorin and Adelaide. The bank took all the contents of the safety deposit box into possession. For the car title, we issued a safekeeping receipt. The three certificates of deposit were already titled in the trust name. What went into the trust were the three certificates of deposit, $4,500 cash, and the quitclaim deed on the real estate. The rings had not been placed in the trust so we placed them in the probate estate. Exhibit F, signed by me and dated October 17, 1989, lists the assets received into the trust. The real estate was a quitclaim deed in the safety deposit box, executed by Rosamond, quit-

claiming the land to herself as trustee of the trust. If a CD had not already been in the trust and they wanted it in the trust, we would have had that person with authority assign it. An automobile title would have to be signed. As to items of personal property, they would sign a bill of sale. That would be normal procedure if we were asked to place these assets in trust. Mr. Van Drie did not ask me to place those assets in trust. If he had done so, I would have complied and would have done so at the time he was there. They were carried in the name of the decedent individually because I was not asked to place them in the trust. Under the will and the trust and the amendment to the trust, the bank is authorized to pay debts of Rosamond, including debts attributable to the trust property. Exhibit L shows all of the assets of Rosamond standing in her name alone at the time of her death.[5] On July 30, 1992, the trust had a balance of $913.04 in cash and the residence. Petitioners' Exhibits W and X are quarterly statements issued by the bank with respect to the trust, and they were provided to the Van Dries. Every three months the Van Dries were advised of the assets which the bank felt were part of the trust. Since August 31, 1989, the Van Dries have been aware of the trust agreement and the accounting reflecting the assets held by the trust, and they have raised no objection. Under the trust, they are deemed to have waived conclusively objections six months after they were presented with that information."

**Lorin Van Drie:** "Mr. Johnson, Adelaide Jones and I signed the inventory showing the complete contents of the safety deposit box on September 29."

Under questioning by Janis Van Drie, Lorin Van Drie testified:

"Q. All right. And what—what happened to the things that were in the box?

A. Mr. Johnson took them.

Q. And what did he do with them?

A. I suppose he put them in the trust. He left the safety deposit room with them in his hands.

5. Exhibit L includes the household contents.

Q. Did you discuss the trust with him that day?

A. Not that day.

Q. All right. Did you tell him to put the household furnishings into the trust account?

A. I explained to him why there was pictures and inventories because before Rosamond and I had discussed that; and for insurance reasons, that's why she had the pictures, the inventories. She itemized it. In fact, while we were there, Mr. Johnson tried to give me the car title back, and I gave it back to him and said, "Well, it needs to be in the trust." So he ended up keeping it, too.

Q. Did you ask Mr. Johnson to add the household furnishings to the trust?

A. Everything was inventoried in the safety deposit box. That was the whole purpose we were there, was to put it in the trust. In fact, Adelaide—that's what I told Adelaide that's why we were—

Q. Did you specifically tell Mr. Johnson that you wanted the household furnishings, which were itemized, appraised, and photographs were in the box, which he took, did you tell him that you wanted those household furnishings added to the trust?

A. That day when we made the inventory everything that was on the list went to the trust, everything.

Q. That was your understanding?

A. Yes."

Also called as a witness by petitioners was Diane Whorton, assistant trust officer at the bank. She testified:

"We have never received anything like furniture or personal property or household furnishings where the grantor did not bring a bill of sale. If a grantor told me he wanted to add personal property to the trust corpus and did not have a bill of sale, we have bill of sales available at the office and we would have executed one. I cannot add assets to

the trust unless the settlor executes a transfer document. According to the [Rosamond Hatten Trust] the failure by a beneficiary to object to matters relating to the accounting constitutes an agreement to the accounting. They have six months to object. Quarterly accounting statements were provided by the bank to Lorin Van Drie. Prior to February 1992, neither Mr. nor Mrs. Van Drie objected to the assets listed in the quarterly statements, either orally or in writing."

From the foregoing evidence the trial court could properly find that Lorin Van Drie, acting under the power of attorney, did not give James Johnson instructions to transfer, or initiate the steps necessary to transfer, the household contents into the trust. Van Drie's own testimony is equivocal on the point. Although the Van Dries were furnished quarterly with a list of the trust assets, they raised no objection to the noninclusion of the household contents. It is unfortunate that payment of claims against the estate, the allowance of which has not been challenged here, requires sale of the household contents.

This court holds that the trial court did not commit plain error in making the finding set forth in the third paragraph of this opinion and in denying petitioners relief on the petition.

The judgment is affirmed.

All concur.

GARRISON, J., did not participate in the decision or opinion of the Court.