William C. SCOTT, Sr., Appellant,

v.

UNION PLANTERS BANK,
N.A., Respondent.

No. 27154.

Missouri Court of Appeals,
Southern District,
Division Two.

May 15, 2006.

Motion for Rehearing or Transfer
Denied June 6, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Derrick R. Williams, Reginald A. Williby, Jackson, for Appellant.

Kristi N. Hoff, Bradshaw, Steele, Cochrane & Berens, L.C., Cape Girardeau, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant William C. Scott ("Husband") appeals from the trial court's grant of summary judgment in favor of Union Planters Bank ("Bank") determining Bank did not wrongfully divest Husband's interest in a certificate of deposit, number 2250500190 ("the CD"), by permitting his wife, Marie Scott ("Wife"), to withdraw all of the money from the CD without Husband's consent. Husband brings two points on appeal, discussed below. We affirm.

The facts are not in dispute. The parties entered into a "Stipulated Joint Statement of Uncontroverted Facts," which was introduced into evidence at trial, together with a "Signature Card" signed by the parties' attorney, Phil Barkett, pursuant to the parties' duly executed power of attorney, and a "Deposit Account Agreement and Disclosure." Viewing "the record in the light most favorable to the party against whom judgment was entered," *ITT Comm'l Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993), the record reveals that Husband and Wife were married on July 31, 1989. At some time during their marriage, Husband suffered "severe and permanent injuries from a farming accident causing severance of his leg." As a result, Husband received a cash settlement of $600,000.00.

On June 15, 2000, Bank issued the CD in the amount of $600,000.00 payable to "WILLIAM SCOTT *OR* MARIE SCOTT."[1] (Emphasis added). The CD was opened for Husband and Wife by their

1. The CD bore interest at the rate of 6.63 percent per year and was set to mature in thirteen months on July 15, 2001. The CD subsequently matured on the foregoing date and was automatically renewed for an additional thirteen months.

attorney Phil Barkett through a Power of Attorney. The signature card for the account indicated: "ACCOUNT OWNERSHIP Joint (Right of Survivorship)" and was signed pursuant to the power of attorney by both Husband and Wife. Further, the signature card stated that the "[n]umber of Signatures Required [to withdraw money from the CD was] 1" and that "[t]he Authorized Individual(s) signing above agree(s), jointly and severally if multiple signers, to the terms set forth in the Deposit Account Agreement and Disclosure...." In the "Deposit Account Agreement and Disclosure" attached to the CD, it set out that

> [e]ach joint account holder, without the consent of any other Account Holder, may, and hereby is authorized by every other joint Account Holder, to make any transaction permitted under the Agreement, including without limitation: to withdraw all or any part of the account funds.

Thereafter, Husband and Wife withdrew a total of $148,208.50 from the original $600,000.00 which left a total deposit amount of $451,791.50.

Then, on August 1, 2002, Wife went to Bank without Husband and withdrew the entire amount of the CD, which at that time was $451, 932.90. She then executed a new "Time Certificate of Deposit," number 2250500596 ("the new CD"), and deposited the entire $451,932.90 into this new CD. The new CD was made payable to "MARIE SCOTT, POD REDETTA GIBBS" and was set to mature in twenty-three months on July 1, 2004.[2] Bank did not notify Husband regarding Wife's actions.

On February 28, 2003, Wife died. After receiving a death certificate verifying Wife's death, Bank paid Gibbs the remaining value of the new CD.

On October 7, 2004, Husband filed his petition for declaratory judgment, naming Bank as defendant. In his petition he sought to "set forth and determine the rights, obligations and liabilities that exist among the parties to the [CD]." Husband contended that "[a]bsent a specific disclaimer that the [CD] is not being held as tenants by the entirety, an account card signed by [H]usband and [W]ife as joint tenants with right of survivorship must be considered as a tenancy by the entirety" and that "[a]s tenants by the entirety, [Bank] wrongfully allowed Wife to unilaterally divest [Husband] of his personal injury settlement funds" by allowing her to withdraw the money from the CD and open a new CD payable to her daughter, Gibbs.

Husband then filed a motion for summary judgment in which he contended there were no genuine issues of material fact and asserted he was entitled to judgment as a matter of law. Bank also filed a motion for summary judgment. On June 20, 2005, the trial court entered its judgment granting Bank's motion for summary judgment and denying Husband's motion for summary judgment. The trial court found "there are no genuine issues of material facts and that [Bank] is entitled to judgment as a matter of law...." Specifically, in making its decision, the trial court set out that it

> considered the explicit language of [s]ection 362.470.5 RSMo as it relates to tenancy by the entirety, but finds that the depository agreement otherwise speci-

---

**2.** As best we discern, Redetta Gibbs ("Gibbs") is Wife's daughter from a previous marriage. The acronym "POD" means "payable on death." *See* § 461.028.2.

Unless otherwise stated, all statutory references re to RSMo 2000.

fied that each account holder without the consent of any other account holder may ... and was authorized by every other joint account holder to make any transactions permitted under the account agreement, including without limitation, to withdraw all or any part of the account funds.

The trial court went on to state, "the Court is not unmindful of the burden that has been placed on [Husband] by [Wife] and P.O.D. recipient, Redetta Gibbs. However, [Bank] under its contractual agreement, and unlike [Husband,] is unable to pursue equitable relief against P.O.D. recipient Redetta Gibbs." This appeal by Husband followed.

Appellate review of whether summary judgment is appropriate is an issue of law, therefore our review is "essentially de novo." *Stanley v. City of Independence,* 995 S.W.2d 485, 486 (Mo. banc 1999). A grant of summary judgment is appropriate when the movant establishes there are no genuine issues of material fact and they are entitled to a judgment as a matter of law. *McAninch v. Robinson,* 942 S.W.2d 452, 456 (Mo.App.1997). A genuine issue of fact must be a "real and substantial one ... consisting not merely of conjecture, theory and possibilities." *ITT,* 854 S.W.2d at 378. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the motion." *Reese v. Ryan's Family Steakhouses, Inc.* 19 S.W.3d 749, 751 (Mo.App. 2000).

■■■ "A tenancy by the entirety, which exists only between a husband and wife, is based on the common law fiction that the husband and wife hold property as one person." *Brown v. Mercantile Bank,* 820 S.W.2d 327, 336 (Mo.App.1991). "It is well established at common law that there

can be an estate by the entirety in a bank account." *Id.*

This common law principle received explicit legislative recognition in the 1977 amendment of [section] 362.470 ... which provides in part: '5. Any deposit made in the name of two persons or the survivor thereof who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified.' *Id.* "A bank account may be held by the entirety even though one of the parties, acting alone, may draw against it." *Id.*

■■■ "Generally speaking, the relation of a bank to its depositor is ... subject to contract." *Washington County Mercantile Bank v. Kennedy,* 855 S.W.2d 520, 522 (Mo.App.1993). "It is the clear and unambiguous language of the contract that controls ownership of the account." *Id.* "Legally, a certificate of deposit is a bank's promissory note, payable only according to its terms." *Brown,* 820 S.W.2d at 337. "A CD is a contract ... generally created and terminated according to the terms of the CD." *Capitol Sav. Bank, FSB v. Snelson,* 998 S.W.2d 862, 866 (Mo.App.1999).

In his first point on appeal, Husband asserts the trial court's grant of summary judgment in favor of Bank was in error. Specifically, Husband argues that because the CD was in the name of both Husband and Wife, there was "a statutory presumption of tenancy by the entirety." Further, he argues that because it "was not otherwise specified that the account was not being held as tenants by the entirety" there was a genuine issue of material fact such that summary judgment was improper. In support of his argument, Husband relies on *Scott v. Flynn,* 946 S.W.2d 248 (Mo.App.1997), and *Harvey v. Luther College,* 802 S.W.2d 585 (Mo.App.1991).

In *Scott,* husband and wife were possessed of a money market account at Cass Bank and Trust Company ("the Bank")

which was titled "W.H. Scott or Abigail C. Scott Joint Tenants with Right of Survivorship." The record reveals that there existed a signature card with both husband's signature and wife's signature on it. *Scott*, 946 S.W.2d at 250. After husband was declared to be incapacitated, the court appointed Michael W. Flynn as his guardian and conservator ("Conservator"). *Id.* Subsequently, Conservator withdrew all the money from the money market account. Wife ultimately filed a petition against the Bank alleging that the Bank "entered into a contract with her and [husband] to hold their funds in tenancy by the entirety and that [the] Bank breached that agreement by paying the money in the account to [Conservator]. . . ." *Id.* Specifically, the appellate court found that "absent a specific disclaimer that the account is not being held as tenants by the entirety, an account card signed by a husband and wife as joint tenants with right of survivorship must be considered a tenancy by the entirety." *Scott*, 946 S.W.2d at 251. The *Scott* court went on to find that "[i]nasmuch as [the] Bank offered no evidence that [Conservator] had [w]ife's approval to withdraw the funds from the account, it follows that [the] Bank did not show that it was entitled to judgment . . . as a matter of law." *Id.* at 251–52.

However, in the present matter, Wife is not a third party conservator and is, in fact, named on the CD at issue as an owner. More importantly, the record in *Scott* reveals no independent agreement among the parties and the *Scott* bank which would permit the unilateral withdrawal of the parties' funds by either party without consent of the other, as is the case in the instant matter.

Likewise, in *Harvey*, the facts pertinent to our review show that husband and wife purchased CD number 1115 in the name of "John and Jewell Harvey" from the Lowry City Bank. *Harvey*, 802 S.W.2d at 586. Several years later, husband "executed an assignment of interest to Luther College . . ." including an assignment of his interest in CD number 1115. *Id.* At the time of the assignment, the CD "was held by [husband and wife] in a tenancy by the entireties on the date of the assignment by [husband]." *Id.* A month later husband and wife divorced. *Id.* "Pursuant to the dissolution decree, [husband] received [CD number] 1115 which was endorsed to him exclusively at that time." *Id.* Husband then delivered actual physical possession of the CD to Luther College in addition to creating a revocable trust agreement which not only gave CD number 1115 to Luther College, but an additional cash gift. *Harvey*, 802 S.W.2d at 586. Thereafter, husband died and his estate filed a petition for the discovery of assets and claimed ownership of CD number 1115. *Id.* In affirming the trial court, the reviewing court determined, *inter alia*, that at the time husband assigned the CD to Luther College, he and wife "owned the entirety of the funds on deposit but neither held a separate, divisible interest . . ." and that "an attempted conveyance by one spouse alone of his or her interest is ineffective." *Id.*

Again, nowhere in the facts in *Harvey* is there a showing of an agreement between husband, wife and the bank as to the right of either husband or wife to withdraw funds unilaterally as is the case in the instant matter under review.[3]

---

**3.** Husband also relies on *Edgar v. Ruma*, 823 S.W.2d 59, 61 (Mo.App.1991) (holding that in a garnishment action "[a]n execution arising from a judgment against the husband alone ordinarily cannot affect a bank account or other property held by a husband and wife as tenants by the entirety") (quotation omitted); *Dockins v. Hooe*, 11 S.W.3d 831, 834 (Mo. App.2000) (holding that "an account opened in a bank in the name of two spouses, or the

It should be made clear at this juncture that we do not disturb settled law that provides that " 'an execution arising from a judgment against the husband [or wife] alone ordinarily cannot affect a bank account or other property held by a husband and wife as tenants by the entirety.' " *Brown*, 820 S.W.2d at 337 (quoting *Vaughn v. Spitz*, 682 S.W.2d 847, 848 (Mo. App.1984)).[4] Nevertheless, "bank accounts apparently can be held by entirety where one spouse can draw upon the account if there is 'an agreement that the money can be paid to either or only one of them.' " *Strout Realty, Inc. v. Henry*, 758 S.W.2d 197, 198 (Mo.App.1988) (quoting *Leuzinger*, 396 S.W.2d at 580).

■ With that being said, this Court finds there is merit in Bank's argument that the present issue is a contract matter between itself and Husband and Wife, not a matter of the interpretation of the wide-ranging law related to tenancies by the entirety.

Here, Husband and Wife opened a CD in both of their names during their marriage. The signature card, which was signed by Husband and Wife, stated "AC-COUNT OWNERSHIP Joint (Right of Survivorship)" and indicated that only one signature was needed for withdrawals. Further, the signature card stated "[t]he Authorized Individual(s) signing above agree(s), jointly and severally if multiple signers, to the terms set forth in the Deposit Account Agreement and Disclosure...." In the "Deposit Account Agreement and Disclosure" attached to the CD, it set out that:

> [e]ach joint account holder, without the consent of any other Account Holder, may, and hereby is authorized by every other joint Account Holder, to make any transactions permitted under the Agreement, including without limitation: to withdraw all or any part of the account funds.

Accordingly, under "the clear and unambiguous language of the contract ..." with Bank, Husband and Wife agreed either party could withdraw money from the CD without the consent of the other. *Washington County Mercantile Bank*, 855 S.W.2d at 522. Unfortunately for Husband, he cannot now be heard to complain about the terms of the contract which he freely entered into.

---

survivor of them, is considered a tenancy by the entirety unless otherwise specified, but in a savings and loan association, it is considered a joint tenancy and not a tenancy by the entirety unless otherwise specified"); and *Liebelt v. Commerce Bank of Springfield*, 703 S.W.2d 77, 80 (Mo.App.1985) (determining that a husband could not, acting individually, transfer a valid interest in a CD to a bank, by pledging a CD held with Wife as tenants by the entirety or as joint tenants to secure husband's individual debt). As with *Scott* and *Harvey*, these cases are factually distinguishable from the case at hand because nowhere in these cases is there evidence of a contractual agreement with the bank in question that either the husband or the wife was permitted to unilaterally withdraw funds from an account, as is the case in the instant matter. Accordingly, these cases do not assist Husband.

4. In *Vaughn*, this Court questioned "the practicality of considering bank accounts as entireties property, particularly where one person alone can draw on the account," noting that

> [o]ne of the tenants cannot sell entireties property and involuntary partition will not lie, but often one person can draw on and completely extinguish a 'joint' bank account. The cases do not seem to turn on whether one or both can draw on the account. Apparently 'by agreement the money can be paid to only one' and the account be held by entireties.

*Id.* at 848 fn* (quoting *Leuzinger v. Merrill Lynch, Pierce, Fenner, & Smith*, 396 S.W.2d 570, 580 (Mo. banc 1965)).

Based on the foregoing, there are no genuine issues of material fact at issue in the present matter and Bank was entitled to a judgment as a matter of law. *McAninch*, 942 S.W.2d at 456. Point One is denied.

In his second point on appeal, Husband asserts the trial court erred in granting Bank's motion for summary judgment "because [Bank] failed to produce strong, clear, positive, unequivocal and definite evidence to overcome the statutory presumption of tenancy by the entirety as to leave no doubt in the trial judge's mind."

We acknowledge that in order to overcome the presumption that there was a tenancy by the entirety the evidence presented "must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the trial judge's mind," *Scott*, 946 S.W.2d at 251; however, as detailed in Point One above, this is not the applicable standard in the present case.

The present matter between Husband and Bank is premised on the contractual agreement entered into between Bank, and Husband and Wife at the time they purchased the CD at issue. Furthermore, Husband has not pointed to any evidence that establishes the existence of a fiduciary relationship between himself and Bank. *See Brown*, 820 S.W.2d at 334–35. Accordingly, the dispute between Husband and Bank is resolvable only according to principles of contract law. *Id.* at 335.

As previously related, "[a] CD is a contract … generally created and terminated according to the terms of the CD." *Capitol Savings Bank, FSB*, 998 S.W.2d at 866. Under Missouri law, the essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo.App.2003). "The existence of a contract necessarily implies that there has been a 'meeting of the minds' between the parties which the court can determine by looking to the intentions of the parties as expressed or manifested in their words or acts." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo.App.1995).

Here, the record reflects that Husband and Wife entered into a contract with Bank by purchasing the CD per the terms and conditions as previously set out. Husband and Wife, who were competent adults, deposited the amount of $600,000.00 with Bank and in exchange received a promissory note in the form of a certificate of deposit in that amount, plus interest as stipulated in the contract. *See Brown*, 820 S.W.2d at 337. Both parties complied with all aspects of the contract including the provisions set out in the signature card and the "Deposit Account Agreement and Disclosure." Following the first maturity date of the CD, Husband and Wife permitted the CD to automatically renew for a new period.

"In a contract case, summary judgment is proper when the meaning of the … contract is so obvious that it can be resolved from the four corners of the document." *Cosky v. Vandalia Bus Lines, Inc.*, 970 S.W.2d 861, 864 (Mo.App.1998). In the present matter, the contract clearly showed that only one signature of either spouse was required in order to withdraw funds from the CD, and both Husband or Wife each, individually, had the power "without the consent …" of the other "to make any transactions permitted under the Agreement, including without limitation: to withdraw all or any part of the account funds." Accordingly, the trial court was correct in ruling in favor of

Bank as a matter of law. Point Two is denied.

The judgment of the trial court is affirmed.

GARRISON, J. and BATES, C.J.