Brown MIDDLETON, Jr., and Doris L. Middleton, Plaintiffs–Appellants,

v.

FIRST NATIONAL BANK, Defendant–Respondent.

No. SD 32178.

Missouri Court of Appeals, Southern District, Division One.

May 10, 2013.

Tom K. O'Loughlin II, O'Loughlin, O'Loughlin & Koetting, L.C., Cape Girardeau, MO, for appellants.

David W. White and Mark M. Haddad, Foland, Wickens, Eisfelder, Roper & Hofer, P.C., Kansas City, MO, for respondent.

GARY W. LYNCH, P.J.

Brown Middleton, Jr. ("JR"), and Doris Middleton, his wife (collectively "the Middletons"), appeal the trial court's grant of summary judgment in favor of First National Bank ("Bank") on their second amended petition. In it, they alleged that Bank wrongfully set off the proceeds of the Middletons' joint certificate of deposit ("CD") to partially pay a debt owed to the Bank by a corporation owned by their sons, Mike and Tim Middleton, on which JR alone was a guarantor.[1] Finding that the CD did not contractually grant Bank a right of set-off as claimed by the Bank and, therefore, Bank was not entitled to

---

1. The use of Brown Middleton's nickname, JR, and the first names for the other members of the Middleton family in this opinion is for clarity of reference and is not intended to indicate any disrespect or familiarity.

summary judgment as a matter of law, we reverse the trial court's judgment and remand for further proceedings.

### Factual and Procedural Background

Mike and Tim owned and operated Middleton Bros., Inc., which in 2001 obtained a $850,000 "floor plan" loan from Bank, the repayment of which was guaranteed by JR. Sometime after the loan was made, JR and Doris opened a $500,000 certificate of deposit at Bank.

Two hundred thousand dollars of the Middletons' original certificate of deposit eventually wound up in account number 302694, the CD in question here, which was created on September 20, 2007. The Deposit Agreement for the CD, signed by JR and Doris, provided, in pertinent part:

> In consideration of Financial Institution's agreement to open this account, and other value received by each of the undersigned, the undersigned Depositor (whether one or more) agrees to the terms stated on this form and acknowledges receipt of this Deposit Agreement and (if checked) ☒ Truth–In–Savings Disclosure ☒ Schedule of Fees and Charges ☒ TIN instructions ☐ Funds Availability Disclosure ☐ Substitute Check Policy Disclosure ☐ Electronic Funds Transfer Disclosure ☐ Financial Institution rules and regulations ☒ Any separate account agreement ☒ *Addendum A* ☒ Addendum B. In the event of any conflict or inconsistency between the terms of any separately receipted document and this Deposit Agreement, the term [sic] of the separately receipted document shall govern and control. . . . The terms and conditions of all receipted documents are incorporated herein by this reference.

(Emphasis added).

Addendum A, which was not signed by JR or Doris, is a two-page document containing sixteen paragraphs covering various account topics. The first sentence of the "GENERAL PROVISIONS" paragraph provides, "The following printed terms and those on the Deposit Agreement and any separate agreements and disclosures, the terms and conditions of which have been incorporated herein (collectively the "Agreement"), will govern the operation of this account[.]" The "SET–OFF" paragraph provides:

> By signing this form, for value received, you each grant to us a security interest in the account and in addition agree that we have the right (without prior notice and when permitted by law) to set-off the funds in this account against any due and payable indebtedness owed to us now or in the future by any of you, either individually or jointly. We may set-off any debt owed to us by any one or more of you without regard to the ownership or source of the funds in the account and without requirement that the debt be owed to us by all of you rather than only some of you. This right of set-off does not apply to this account to the extent restricted or prohibited by law or contract. You agree to hold us harmless from any claim arising from exercise of our right of setoff.

Near the end of 2007, Middleton Bros., Inc., suffered financial difficulties and became insolvent. Shortly thereafter, Bank set off the CD proceeds against the balance due on the note owed by Middleton Bros., Inc., in partial satisfaction of JR's guarantee.

JR and Doris filed this action seeking to recover the CD proceeds. Bank filed a motion for summary judgment on all counts, claiming that its right to set-off as provided in Addendum A to the Deposit Agreement defeated the Middletons'

claims.[2] The trial court sustained that motion and entered judgment for Bank on all counts in the Middletons' second amended petition. This appeal timely followed.

### Standard of Review

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

### Discussion

In their first point, the Middletons claim that the trial court misapplied the law and that Bank was not entitled to summary judgment as a matter of law because the SET–OFF paragraph in Addendum A required, as a condition to its application, that the Middletons sign Addendum A during the formation of the contract, and it is an uncontroverted fact that they did not sign it. The Bank responds that because Addendum A was incorporated into the Deposit Agreement, which the Middletons signed, they were not required to sign Addendum A for the SET–OFF paragraph to apply. The resolution of this issue hinges upon the meaning of the phrase "this form" as used in the introductory phrase— "By signing this form"—in the SET–OFF paragraph of Addendum A.

The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. Additionally, each term of a contract is construed to avoid rendering other terms meaningless. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense.

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003) (internal citations omitted).

While Bank is correct that the Deposit Agreement incorporates the terms and conditions of Addendum A, it ignores that the Deposit Agreement also provides that "in the event of any conflict or inconsistency between the terms of [Addendum A] and this Deposit Agreement, the term [sic] of [Addendum A] shall govern and control." [3] The only reasonable meaning of these provisions is that the terms of Addendum A govern and control over anything contrary or inconsistent in the Deposit Agreement and, therefore, nothing in the Deposit Agreement, including its incor-

---

**2.** Bank argued to the trial court that "the real issue is whether the Bank was contractually allowed to use the proceeds of the $200,000 CD to satisfy an individual debt of Brown Middleton."

**3.** Bank's reliance on *Scott v. Union Planters Bank, N.A.*, 196 S.W.3d 574 (Mo.App.2006), is misplaced for two reasons. First, the deposit agreement there did not contain a provision similar to the one here providing that the terms and conditions in incorporated documents take precedence and control over the provisions in the deposit agreement. Second, none of the unsigned documents incorporated into the deposit agreement there contained an expressed signature requirement as in the SET–OFF paragraph in Addendum A here.

poration clause, can serve to alter or vary the terms and conditions as used in Addendum A. So, our inquiry turns to Addendum A.

The first paragraph of Addendum A, entitled "GENERAL PROVISIONS," expressly refers to the "Deposit Agreement" and defines it and "any separate agreements and disclosures" as "collectively the 'Agreement.'" Both terms are thereafter repeatedly employed in some of the remaining fifteen paragraphs of Addendum A. For example, the "WITHDRAWALS" paragraph provides,

> Unless otherwise indicated on *the Deposit Agreement,* any one of you who signs this *Agreement,* as a depositor or otherwise, may withdraw or transfer all or any part of the account balance at any time on forms approved by us. Each of you authorizes each other person signing this *Agreement* to endorse any item[.]

(Emphasis added).

On the other hand, the phrase "this form" only appears in one place in Addendum A—the introductory phrase of the SET–OFF paragraph. In reading Addendum A as a whole, *see id.,* the phrase "this form" could not reasonably refer to either the Deposit Agreement or any other separate CD document, because if that was what the parties intended, they would have used "the Deposit Agreement" or "this Agreement" as defined and actually used by the parties elsewhere in Addendum A. Once the Deposit Agreement and the other CD documents are eliminated as possible references, the phrase "this form" clearly and unambiguously refers to the only remaining possibility—Addendum A. This construction of the phrase "this form" gives a reasonable meaning to all of the relevant terms used in Addendum A and does not render any relevant term mean-ingless or without function or sense. *See Dunn Indus. Grp., Inc.,* 112 S.W.3d at 428.

This meaning also comports with what a reasonable person, when presented with a compilation of several different forms, would plainly, ordinarily, and usually understand—a reference to "this form" means the particular form within the compilation containing that reference. *Id.* Indeed, the Deposit Agreement utilizes this common understanding by referencing itself using the phrase "this form."

Because Addendum A requires that it be signed by the Middletons before the terms of the SET–OFF paragraph become a part of the CD contract, and it is an uncontroverted fact that the Middletons did not sign Addendum A, Bank had no contractual right to set off the CD proceeds to satisfy JR's obligation on the Middleton Bros., Inc., debt to the Bank. The Middletons' first point is granted.

In the absence of a contractual right of set-off, as claimed by Bank in its motion for summary judgment, Bank was not entitled to summary judgment as a matter of law, and the trial court erred in entering summary judgment in its favor. Because this issue is dispositive of the appeal by requiring a reversal and remand, we need not address any other claim of error raised by the Middletons.

### Decision

The trial court's judgment is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

NANCY STEFFEN RAHMEYER, and WILLIAM W. FRANCIS, JR., JJ., concur.